**In re Peter F. KUNTZ and Diane E. Kuntz, Debtors.**

**Peter F. Kuntz, Appellant,**

v.

**Stephen E. Shambam, Chapter 7 Trustee, Appellee.**

**BAP No. MB 98–020.**

United States Bankruptcy Appellate Panel of the First Circuit.

April 7, 1999.

---

Brian D. Widegren, West Chatham, MA, for Peter F. Kuntz.

Stephen E. Shamban, Trustee, Braintree, MA, Ann Brennan, Braintree, MA, for Stephen E. Shamban.

Richard Askanese, Office of the U.S. Trustee, Boston, MA, for Office of the U.S. Trustee.

U.S. Trustee, Boston, MA, trustee—appellee pro se.

Diane Elder Kuntz, Eastham, MA, pro se.

Before GOODMAN, LAMOUTTE and CARLO, U.S. Bankruptcy Judges.

LAMOUTTE, Bankruptcy Judge.

The issue on appeal is whether the actions of the debtor in delaying notification of receipt and turnover of an asset for three months constitute a lack of good faith sufficient to deny his one-time right to convert his liquidation case to one under Chapter 13 pursuant to 11 U.S.C. § 706(a).

### JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel has jurisdiction to consider appeals from final orders issued by the bankruptcy court, 28 U.S.C. § 158(a)(1), in the manner prescribed by Part VIII of the Federal Rules of Bankruptcy Procedure. Whether a bankruptcy court properly denied a debtor's request for conversion is a question of law requiring *de novo* review on appeal. *Matter of Martin*, 880 F.2d 857, 858 (5th Cir.1989).

## BACKGROUND

Mr. and Mrs. Kuntz filed a joint voluntary petition under Chapter 7 of the United States Bankruptcy Code (the Code) on November 26, 1996. A section 341(a) creditors' meeting was held and on February 26, 1997, the Chapter 7 Trustee filed a "No Distribution Report." Shortly thereafter, the debtors filed an Amended Schedule B and C[1] indicating an interest in the estate of Mr. Kuntz's recently deceased mother. Upon receiving notice of a newly declared asset, the trustee requested and was granted leave to withdraw the "No Distribution Report" on April 29, 1997. On May 30, 1997, the bankruptcy court entered an order of discharge under section 727 of the Code.

On February 12, 1998, Mr. Kuntz filed a "Motion to Sever and Convert to Chapter 13" along with a Plan and Amended Schedules. Prior to the request to convert to Chapter 13 but subsequent to filing the joint petition, Mr. Kuntz had obtained a divorce and had received an inheritance in the sum of approximately $45,000. In his motion, Mr. Kuntz requested that he be allowed to utilize the inheritance to establish an office to practice law on Cape Cod and, in return, he proposed a 60–month plan, later amended to provide for payments equal to the present value of the inheritance, to be funded from his future earnings.

The motion was allowed by the bankruptcy court on February 17, 1998. An opposition, grounded solely on assertions that the Plan was not feasible, was subsequently filed by the trustee. The bankruptcy court considered the opposition as a motion for reconsideration. A hearing was held on February 27, 1998, and the bankruptcy court vacated its prior order allowing severance and conversion finding that the debtor acted in bad faith by failing to timely declare and turn over the asset. This appeal followed.

## CONVERSION RIGHTS

■ Section 706(a) of the Code provides that a Chapter 7 debtor has a one-time right to convert his case to one under another chapter for purposes of reorganization or repayment to creditors. This provision reads:

> The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

11 U.S.C. § 706(a). Legislative history indicates a clear Congressional preference for allowance of conversion by a debtor for debt repayment:

> Subsection (a) of this section gives the debtor one absolute right of conversion of a liquidation case to a reorganization or individual repayment plan case. If the case has already once been converted from chapter 11 or 13 to chapter 7, then the debtor does not have that right. The policy of the provision is that the debtor should always be given the opportunity to repay his debts.

*Matter of Martin,* 880 F.2d at 859, *quoting* S.Rep. No. 989, 95th Cong., 2d Sess. 380.[2] *See also In re Starkey,* 179 B.R. 687 (Bankr.N.D.Okla.1995) (comprehensive discussion of statute and legislative history).

> The premises of the bill with respect to consumer bankruptcy are that use of the bankruptcy law should be the last resort; that if used, debtors should attempt repayment under chapter 13 . . .
> *Martin,* 880 F.2d at 859, *quoting* H.R.Rep. No. 595, 95th Cong., 2d Sess. 118.

---

1. Debtors' Schedule B lists personal property and Schedule C lists the property claimed as exempt. *See* App. A3, A8, A12, A17, A21 & A25.

2. The Congressional record further underscores Congress' preference that a debtor seek relief under Chapter 13 rather than Chapter 7:

Cases interpreting the conversion rights under section 706(a) of the Code have consistently recognized the debtor's one-time right to conversion, which right may only be denied in "extreme circumstances". *Martin*, 880 F.2d at 859. *See also In re Calder*, 93 B.R. 739 (Bankr.D.Utah 1988) (although debtor has absolute one-time right to convert its liquidation case to one for repayment, 11 U.S.C. § 105(a) provides the court with the necessary authority for denial in order to protect the integrity of the system and to prevent an abuse of the process). Courts have articulated several tests when attempting to analyze the circumstances under which a debtor's one-time right to conversion may properly be denied. *See e.g., Finney v. Smith (In re Finney)*, 992 F.2d 43, 45 (4th Cir.1993) (right to conversion may be denied where the debtor acted with subjective bad faith and conversion would be objectively futile); *see also In re Lesniak*, 208 B.R. 902 (Bankr.N.D.Ill.1997) (debtor's post-discharge request for conversion denied as an abuse of process); *In re Thornton*, 203 B.R. 648 (Bankr.S.D.Ohio 1996) (request for conversion denied where evidence supports debtor's lack of good faith); *In re Jeffrey*, 176 B.R. 4 (Bankr.D.Mass.1994) (denial of conversion appropriate where debtor has acted in bad faith or where granting would result in an abuse of the process or other gross inequity).

Consistent with the underlying policy of § 706(a), courts which have considered the debtor's right to conversion vis-a-vis his actions during the Chapter 7 case have required a substantial showing prior to denying the request. For example, the Fourth Circuit has held that a debtor's recalcitrance and fraud during the Chapter 7 case were "insufficiently 'egregious' to warrant such extreme action." *Finney*, 992 F.2d at 45 (in Chapter 7 case, debtor failed to comply with trustee's requests and made undisclosed post-petition transfers of real estate). In addition, bankruptcy courts have adhered to the same standard when denying conversion for a lack of good faith.[3] *See Thornton*, 203 B.R. at 652 (likening the good faith requirement for conversion to that imposed by § 1325(a)(3), the bankruptcy court found that a debtor's concealment of assets and lying about them when discovered, as well as prepetition overvaluing of assets and devaluing of liabilities in order to procure loans, constituted bad faith sufficient to deny conversion); *In re McNallen*, 197 B.R. 215, 220–21 (Bankr.E.D.Va.1995) (request for conversion to Chapter 11 found to be in bad faith where debtor obfuscated true interest in family trust and partnership and sought conversion with sole motivation to continue litigation against family members rather than to repay creditors and plan was futile); *In re Bowman*, 181 B.R. 836, 846 (Bankr.D.Md.1995) (request for conversion made in bad faith where debtor waited until Chapter 7 discharge before disclosing her largest asset, a $400,000 claim, and her largest debts, nondischargeable tax debts, and where stated purpose of conversion was to get control of litigation so that she could reject settlement offer and proceed with litigation). Bankruptcy courts have also applied this standard when denying conversion for abuse of process. *See Lesniak*, 208 B.R. at 906 (denied request to convert where the debtors' schedules were "fraught with discrepancies" and when discovered, the debtors amended to suit their own purposes and motivation was to save property rather than repay their debts); *Jeffrey*, 176 B.R. at 6 (conversion denied where debtors' request followed trustee's discovery of undisclosed valuable tort claim after discharge had been received in Chapter 7 case); *Calder*, 93 B.R. at 740 (conversion denied where debtor, an attorney, who had been the debtor in three

---

**3.** For an interesting discussion on distinct categories of bad faith, *see In re Bowman*, 181 B.R. 836, 845 (Bankr.D.Md.1995) (subjective bad faith on behalf of a debtor seeking conversion implies that the real motivation behind the request was to abuse the reorganization process and cause hardship or delay to creditors by seeking reorganization whereas objective bad faith requires a finding that there is no hope of rehabilitation).

prior cases which had all been dismissed and which reflected minimal repayment efforts, requested conversion only after he had been denied a discharge in his Chapter 7 case for knowingly and fraudulently making a false oath).

## DISCUSSION

At the hearing on trustee's motion opposing conversion on February 27, 1998, the trustee informed the bankruptcy court that although Mr. Kuntz had received the inheritance in November, 1997, he was not made aware of the receipt of the $45,000 inheritance until February 12, 1998 when Mr. Kuntz filed his motion. The trustee further asserted that counsel for debtor informed him that the debtor had invested the inheritance in high-tech stocks.[4]

The trustee estimated that the inheritance would provide an immediate 50% dividend to the unsecured creditors and although Mr. Kuntz proposed payments equal to that amount over the 60–month plan, there was no guarantee that Mr. Kuntz would be successful. As a result, the risk of loss of the asset was substantial and completely borne by the creditors. The trustee concluded that the debtor's request to convert was merely an attempt to "insulate a substantial asset from the creditors." Supp.App. B113. However, these are matters that should be presented at a hearing on confirmation of the plan, 11 U.S.C. § 1324, wherein the requirements of sections 1322 and 1325 of the Bankruptcy Code must be addressed.

Counsel for the debtor indicated that he was hired at about the time that Mr. Kuntz received the inheritance and that before his representation, Mr. Kuntz, an attorney of 13 years, had been representing himself and his wife in the bankruptcy case. Counsel further alleged that both he and Mr. Kuntz had attempted to contact the trustee on several occasions but had not received any response.[5] Therefore, Mr. Kuntz handed over the asset to counsel, who deposited the funds into an escrow account. Thereafter, he assisted Mr. Kuntz in filing his Chapter 13 Plan and motion to sever and convert to Chapter 13.

In addition, counsel asserted that considerable communication between Mr. Kuntz and the trustee's counsel had taken place in the Spring of 1997 when the debtor learned of the inheritance. At that time, Amended Schedules B & C had been submitted indicating the asset, although the value was listed as unknown, and to reflect an increase in the debtor's claimed exemption. Counsel concluded by arguing that the proposed plan was viable.

After argument, the bankruptcy court ruled as follows:

> While Chapter—excuse me, Section 706 states absolutely that a debtor may convert a case under this Chapter to a case under Chapter 13 at any time there hasn't been a prior conversion, I've always held that there's a good faith exception.
>
> I think under these circumstances where there are funds that should have come into the Chapter 7 Trustee, that should have been distributed by the Chapter 7 Trustee, that were not, especially where the debtor is an attorney who well knew his obligations, that enough bad faith has been shown to merit denial of the motion. Now since the motion has already been granted, upon reconsideration the prior order is vacated. As a result, the case is re-

4. In a post-judgment filing, the debtor explained that the funds invested did not include the $45,000 inheritance. *See* App. A56, ¶ 14. The trustee did not reiterate this assertion on appeal.

5. Debtor's post-judgment filing includes documentation indicating that phone calls were

made to the trustee after debtor received the initial $6,000 installment of his inheritance from an annuity account in August, 1997; however, there is no documentation of the alleged phone calls made to the trustee after the receipt of the remainder of the inheritance in November. *See* App. A61–A64.

turned to Chapter 7, and the severance is voided as well. . . .

Supp.App. B117–B118.

The bankruptcy court relied on two facts in determining that Mr. Kuntz's actions constituted bad faith sufficient to deny his request for conversion, namely: 1) that the debtor received the inheritance in November, 1997 and did not turn over the funds to the trustee for distribution and/or notify the trustee until February, 1998, some three months later; and 2) that the debtor was an attorney for 13 years and "knew his obligations."

Rule 1007(h) of the Federal Rules of Bankruptcy Procedure provides that the debtor has 10 days, unless the court orders otherwise, to supplement his schedules reflecting an interest acquired after filing a petition.[6] The facts show that although the debtor timely amended his schedules to reflect an increase in his claimed exemption and scheduled the asset as personal property, Mr. Kuntz did not timely amend the schedules in November to reflect the value of the inheritance.

While we agree that a debtor's one-time right to conversion may only be denied in "extreme circumstances" constituting bad faith, we do not find that the facts of this case rise to that level of egregiousness sufficient to deny his request for conversion. While a three-month delay may be indicative of subjective bad faith on behalf of the debtor, this implication is tempered by several facts not challenged by the trustee. The record on appeal shows that as early as April, 1997, the debtor disclosed the asset by filing Amended Schedules B and C; the debtor provided the name and address of the Executor of his mother's estate to the trustee upon request; once received, the debtor protected the asset by placing it in an escrow account and retained counsel to assist in filing a Chapter 13 Plan. In addition, the debtor disclosure of the asset and the trustee's withdrawal of the "No Distribution Report" were completed prior to the bankruptcy court's entry of the order of discharge on May 30, 1997. Although it is undisputed that the debtor was an attorney of 13 years, his affidavit indicates that his exposure to bankruptcy law has been minimal. *See* App. A54, ¶ 4.

In the worst case scenario, even if we were to impute debtor with the knowledge of the legal obligation to immediately contact the trustee upon receipt of the asset, there is no evidence to support the conclusion that the debtor intended to hide the asset or purposefully shielded the asset from his creditors. While we do not condone the debtor's delay in informing the court, trustee and/or creditors that he obtained the asset, we find that the delay, without more, does not translate into a lack of good faith sufficient to support denial of the debtor's right conferred by § 706(a).

We decline to decide issues related to the futility and/or confirmability of debtor's Plan or whether the Plan is in the best interest of the estate and creditors as the bankruptcy court did not take these matters into consideration when issuing the ruling. Also, the basis of the bankruptcy

---

6. Rule 1007(h) reads:

    If, as provided by § 541(a)(5) of the Code, the debtor acquires or becomes entitled to acquire any interest in property, the debtor shall within 10 days after the information comes to the debtor's knowledge or within such further time the court may allow, file a supplemental schedule in the chapter 7 liquidation case, chapter 11 reorganization case, chapter 12 family farmer's debt adjustment case, or chapter 13 individual debt adjustment case. If any of the property required to be reported under this subdivision is claimed by the debtor as exempt, the debtor shall claim the exemptions in the supplemental schedule. The duty to file a supplemental schedule in accordance with this subdivision continues notwithstanding the closing of the case, except that the schedule need not be filed in a chapter 11, chapter 12, or chapter 13 case with respect to property acquired after entry of the order confirming a chapter 11 plan or discharging the debtor in a chapter 12 or chapter 13 case.

FED.R.BANKR.P. 1007(h).

court's ruling precludes consideration as to whether it would be appropriate, or possible, under the facts of this case, to convert a Chapter 7 case where an order discharging the debtors has been previously issued. *See, e.g., In re Tardiff,* 145 B.R. 357 (Bankr.D.Me.1992).

## CONCLUSION

For these reasons, we vacate the bankruptcy court's denial of the debtor's request to convert his Chapter 7 case to one under Chapter 13 and remand the case to the bankruptcy court for further proceedings.

**SO ORDERED.**