**In re Clement PORTER, Debtor.**

**No. 01–15288–CJK.**

United States Bankruptcy Court, D. Massachusetts.

April 22, 2002.

Ira H. Grolman, Boston, MA, for debtor.

Michael H. Theodore, Boston, MA, for Chapter 7 Trustee.

### MEMORANDUM OF DECISION ON DEBTOR'S MOTION TO CONVERT CASE TO CHAPTER 13

CAROL J. KENNER, Bankruptcy Judge.

The issue before the Court is whether the Debtor should be permitted, over the

objection of the Chapter 7 Trustee, to convert his case under Chapter 7 of the Bankruptcy Code to one under Chapter 13, where the Debtor failed to disclose in his petition certain pre-petition transfers of real estate to family members and where the feasibility of his proposed Chapter 13 plan hinges upon gratuitous contributions from family members.

### Background and facts

The Debtor filed this case under Chapter 7 of the Bankruptcy Code on June 28, 2001. In relevant part, the Debtor's schedules disclosed the following: (i) Schedule A—Real Property—16 Wells Road, Brookfield, Massachusetts, the Debtor owning the property as tenant in common with his brother, Michael Porter, the Debtor's one-half interest being valued at $47,500; (ii) Schedule C—Property Claimed as Exempt—federal exemption of $9,500, pursuant to 11 U.S.C. § 522(d)(1), in 16 Wells Road, Brookfield; (iii) Schedule D—Creditors holding Secured Claims—$76,372.00 owed to Southbridge Credit Union secured on 16 Wells Road, Brookfield, Michael Porter being listed as a co-debtor; (iv) Schedule F—Creditors Holding Unsecured Nonpriority Claims— $71,315.00 being credit card debt; (v) Schedule I—Income—none, the Debtor describing himself as an unemployed construction worker; (vi) Schedule J—Expenses—$1,337.50; and (vii) Statement of Financial Affairs—the Debtor gave his income as 1999: $6,634, 2000: $500, 2001: none, and stated that he had made no transfers of property during the year preceding the filing of his petition.

After the section 341 meeting, the Chapter 7 Trustee filed a timely objection to the Debtor's claim of exemption in the Wells Road property on the grounds that the Debtor had made a pre-petition transfer and no longer owned any interest in the property at the petition date. The parties filed a stipulation agreeing to these facts on October 9, 2001, in which the Debtor withdrew his claim of exemption and agreed to file amended schedules.

Contemporaneously, the Chapter 7 Trustee filed two adversary proceedings: an objection to discharge complaint pursuant to 11 U.S.C. § 727, and a complaint to set aside fraudulent transfers and recover property transferred within one year of the petition to family members, Michael, James and Bonita Porter. Following these events, the Debtor filed amended Schedules A, C, D and H, and an Amended Statement of Financial Affairs. Amended Schedule A—Real Property—listed three properties, all listed at zero values because the Debtor had transferred his interest before the petition date: 16 Wells Road, Brookfield, 602 Main Street, Sturbridge, and 2–4 Brookfield road, Sturbridge. The Amended Statement of Financial Affairs disclosed three pre-petition transfers of property: (i) 16 Wells Road, Brookfield, transferred to the Debtor's brother, Michael Porter, on March 9, 2001, in consideration of Michael assuming the outstanding note and mortgage; (ii) 602 Main Street, Sturbridge, transferred to the Debtor's brother and sister-in-law, James and Bonita Porter, on March 9, 2001, in consideration of James and Bonita assuming the outstanding note and mortgage; and (iii) 2–4 Brookfield Road, Sturbridge, transferred to the Debtor's brother and sister-in-law, James and Bonita Porter, on March 9, 2001, in consideration of James and Bonita assuming the outstanding note and mortgage. The Debtor also stated that there was no equity in either property transferred to James and Bonita Porter.

On January 22, 2002, the Debtor filed his Motion to Convert the case to Chapter 13, as well as a Chapter 13 Plan and Amended Schedules I and J. Amended Schedules I and J disclose increased

monthly expenses of $1,975.00, and monthly income comprising $2,200.00 disability and $1,375.00 in contributions from family members, totaling $3,575.00, and leaving $1,600.00 net disposable income. The Chapter 13 Plan proposes payments of $1,547.00 over sixty months, sufficient to pay the $1,200 priority claim of the IRS, a 100% dividend to unsecured creditors, and an estimated $10,000 in fees to the Chapter 7 Trustee. The Debtor subsequently filed another amended Schedule I in which his disability income is replaced by pension income of $2,279.00 per month which the Debtor now states he has been receiving since December 2001.[1] The Debtor and his relatives, Michael, James and Bonita Porter filed affidavits setting forth their intent and ability to assist the Debtor with his plan payments to the tune of $1,375 per month, or whatever amount was necessary to fully fund the plan.

The Chapter 7 Trustee filed an Opposition to the Motion to Convert and the Court held a hearing, taking the matter under advisement.

### The positions of the parties

The Debtor contends that he should be allowed to exercise his one-time right of conversion to Chapter 13 as his conduct does not rise to the level of egregiousness sufficient to abridge the right conferred by section 706(a) of the Code, the Debtor having neither acted in bad faith, nor intended to hinder or harm his creditors. The Debtor maintains that at the time of the transfers he had just emerged from internment in a halfway house and, being overwhelmed with debt, simply responded to an offer from his siblings to assume the outstanding mortgages. He further alleges that he received no value from the transfers.[2] The Debtor admits the veracity of the Chapter 7 Trustee's allegations concerning the pre-petition transfers of real estate and says he has complied fully with the Trustee's requests for information. As to the plan funding offered by his family, the Debtor states that these contributions would not be gratuitous because, as defendants in one of the adversary proceedings, they have an economic interest in the Debtor's proposed Chapter 13 Plan.

The Chapter 7 Trustee opposes the Motion to Convert on several fronts. First, says the Trustee, the Debtor's conduct in concealing his pre-petition transfers and the timing of his Motion to Convert only after exposure by the Trustee amounts to bad faith, and despite asserting otherwise, the Debtor has not responded to the Chapter 7 Trustee's discovery requests. Second, conversion to Chapter 13 should not be permitted where the Debtor is unable to propose a feasible plan without gratuitous contributions from family members that do not constitute regular income for the purposes of 11 U.S.C. § 101(30). Third, the Trustee's appraisals indicate sufficient equity in the two Sturbridge properties to pay creditors in full with interest within a considerably shorter time frame than the sixty month plan proposed by the Debtor.

### The legal standard

Conversion by the debtor of a case from Chapter 7 to another chapter of the Bankruptcy Code is governed by § 706(a) of the Bankruptcy Code, which states, in relevant part:

---

1. According to his schedules, and all other things being equal, the Debtor's monthly net disposable income would become $1,679, potentially shortening the plan to fifty-six months.

2. Presumably the Debtor refers to his assertion that there was no equity in the properties transferred to James and Bonita, such that the transfers and assumption of the mortgages did not reduce the Debtor's net assets available to creditors.

The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if this case has not been converted under section 1112, 1307, or 1208 of this title. 11 U.S.C. § 706(a). The legislative history of this section indicates that where, as here, a case has not been converted to Chapter 7 from another chapter, this subsection affords the debtor "[the] one-[time] absolute right of conversion of a liquidation case to a reorganization or individual repayment plan case." H.R.Rep. No. 595, 95th Cong., 1st Sess. 380 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6336; S.Rep. No. 989, 95th Cong., 2d Sess. 94 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5880. It further reveals that "[t]he policy of the provision is that the debtor should always be given the opportunity to repay his debts." *Id.*

The statute and legislative history use categorical language: "the debtor may convert ... *at any time*," "*absolute* right of conversion," and "the debtor should *always* be give the opportunity to repay his debts," and some courts interpret the statute literally as giving the debtor an unrestricted right to convert. Others, including the First Circuit, hold that the right of conversion bestowed in § 706(a) is not unlimited, although it should be denied only in extreme circumstances. *See In re Kuntz*, 233 B.R. 580, 583 (1st Cir. BAP 1999) (cases interpreting the conversion rights under section 706(a) have consistently recognized the debtor's one-time right to conversion, which right may only be denied in extreme circumstances); *Matter of Martin*, 880 F.2d 857, 859 (5th Cir.1989) (courts refuse to interfere with right to convert in absence of extreme circumstances); *In re Jeffrey*, 176 B.R. 4, 4–5 (Bankr.D.Mass.1994) (right of conversion is not unlimited and may be denied where debtor has acted in bad faith or where granting would result in an abuse of process or other gross inequity); *In re Krishnaya*, 263 B.R. 63, 69 (Bankr. S.D.N.Y.2001) (court has the power to deny conversion but should exercise it sparingly); *In re Spencer*, 137 B.R. 506, 510–14 (Bankr.N.D.Okl.1992) (section 706(a) permits conversion from Chapter 7 to Chapter 13 in the absence of extreme circumstances amounting to bad faith, imposition on the court's jurisdiction, abuse of process, or other gross inequity); *In re Calder*, 93 B.R. 739, 740 (Bankr.D.Utah 1988) (conversion under § 706(a) to Chapter 13 denied pursuant to court's authority under 11 U.S.C. § 105(a) to prevent abuse of the bankruptcy process).

In those courts that do not give the debtor an unfettered right to convert, what circumstances are sufficiently extreme to warrant denial? There are a few areas of consensus. These courts generally deny conversion where the debtor acted in subjective bad faith and where conversion would be objectively futile.[3] *See e.g. Kuntz*, 233 B.R. at 585 (conversion may be denied only in extreme circumstances constituting bad faith); *Finney v. Smith (In re Finney)*, 992 F.2d 43, 45 (4th Cir.1993) (conversion denied where debtor acted in bad faith); *In re Lilley*, 29 B.R. 442, 443 (1st Cir. BAP 1983) (denial of the debtor's motion to convert was proper where, after adjusting budget to include minimal amounts for expenditures for entertainment and contingencies, combined monthly income was insufficient to propose a feasi-

---

**3.** These terms are discussed in *In re Bowman*, 181 B.R. 836, 845 (Bankr.D.Md.1995) (subjective bad faith on behalf of the debtor seeking conversion implies that the real motivation behind the request was to abuse the reorganization process and cause hardship or delay to creditors by seeking reorganization without an intent or ability to reorganize, whereas objective bad faith requires a finding that there is no hope of rehabilitation).

ble plan); *In re Tardiff*, 145 B.R. 357, 360–61 (Bankr.D.Me.1992) (conversion denied when debtor is ineligible for Chapter 13 relief or where debtor is incapable of proposing a feasible plan). Equally egregious are circumstances where the courts find that conversion would amount to an abuse of process, or other gross inequity. *See e.g. Jeffrey*, 176 B.R. at 6 (conversion to Chapter 13 after receiving a discharge in Chapter 7 would be an abuse of process where the debtors' clear purpose in converting is to evade rather than repay their debts); *Tardiff*, 145 B.R. at 360–61 (conversion will be denied when it would operate to pervert, rather than implement, congressional policy of permitting debtors to repay their debts); *In re Spencer*, 137 B.R. 506, 514–15 (Bankr.N.D.Okla.1992) (debtor's right to convert can be conditioned or denied as necessary to prevent injustice to other parties and imposition on the court).

▮ Within these parameters, a multitude of patterns of debtor behavior have been examined by the courts, with differing conclusions reached. But, courts confronted with this issue have generally recognized the need to consider the totality of facts and circumstances, and have articulated several factors relevant to the analysis. *See e.g. In re Pakuris*, 262 B.R. 330, 335–36 (Bankr.E.D.Pa.2001) (court will consider the totality of circumstances by reviewing such factors as (i) whether the debtor is seeking to convert to chapter 13 in good faith including review of timing of motion to convert, debtor's motive in filing motion, and whether the debtor has been forthcoming with the bankruptcy court and creditors, (ii) whether the debtor can propose a confirmable plan, (iii) impact on debtor of denying conversion weighed against prejudice to creditors caused by allowing conversion, (iv) effect of conversion on efficient administration of bank-

ruptcy estate, and (v) whether conversion would further abuse of the bankruptcy process); *In re Marcakis*, 254 B.R. 77, 82 (Bankr.E.D.N.Y.2000) (court must consider possibility of abuse, prejudice to other parties or creditors, eligibility of the debtor under Chapter 13, and all circumstances generally); *In re Dews*, 243 B.R. 337, 340 (Bankr.S.D.Ohio.E.Div.1999) (conversion motions are subject to judicial review of debtor's motives and of the likelihood that a confirmable plan can be proposed). Accordingly, and in line with the approach taken by these other cases, this Court will consider the totality of the facts and circumstances surrounding the Motion to Convert.

### Discussion

▮ The first key issue is the Debtor's motive in filing the Motion to Convert, and a finding of subjective bad faith would be sufficient grounds to deny the Motion. For his part, the Debtor maintains that he never intended to hinder or delay his creditors, and that when he left the halfway house, consumed by debt, his pre-petition transfers to his siblings of the three parcels of real estate were simply the acts of a desperate man responding to offers of help. In any case, he protests, no harm was done because no diminution in the net value of the bankruptcy estate occurred, and he now proposes to repay his creditors in full over five years. However, the fact remains that the Debtor's answer to question ten, posed on the Statement of Financial Affairs, is unambiguous: when asked to list *all* property transferred within one year immediately preceding the petition, the Debtor replied "None". The Debtor did not correct that misstatement until after the Chapter 7 Trustee had sought out and established the truth and commenced adversary proceedings to deny the Debtor a discharge and to recover the property, and only then did the Debtor

propose to convert to Chapter 13. Additionally, contrary to the Debtor's assertion that no harm was done to the net value of the bankruptcy estate, the opposite appears to be true. According to the Trustee's up-to-date appraisals, there is equity in both Sturbridge properties, and in significant enough amounts to pay all creditors in full with interest, and quickly. Furthermore, although the consideration for the transfer of Wells Road was brother Michael's assumption of the mortgage, and the Trustee makes no allegations as to the value of this property, I observe that according to the Debtor's other Schedules, Michael was a co-signor and thus already fully liable on the mortgage. His assumption of a liability he already bore amounts to no consideration at all. In short, the Chapter 7 Trustee's position on this issue is more compelling, but not on its own necessarily conclusive.

 Also relevant is the Debtor's ability to propose a confirmable Chapter 13 plan, and the part played by the financial support offered by Michael, James and Bonita Porter, the recipients of the pre-petition transfers. The Debtor bears the burden of proof in establishing his ability to make the payments needed under the plan, and must provide sufficient factual basis for the Court to determine both the regularity and stability of his income. *Matter of Anderson*, 21 B.R. 443, 446 (Bankr.N.D.Ga.1981). It is undisputed that the Debtor's income alone would certainly be insufficient to promise any more than a small dividend to his unsecured creditors. The financial assistance now offered by these family members is far more than a "top-up", but would comprise a significant proportion of the total income needed over sixty months to sustain the Chapter 13 Plan as currently proposed. As a general proposition, gratuitous payments to a debtor by his family members do not constitute regular income for Chapter 13 purposes, although exceptions exist, particularly where the contribution comes from a non-debtor spouse, or is made pursuant to some contractual or legal obligation, or where there is evidence of regular contributions having been made in the past. *In re Antoine*, 208 B.R. 17, 19 (Bankr.E.D.N.Y.1997) (gratuitous payments by family members do not, as a general rule, constitute regular income and confirmation has been denied to plans premised on such payments to the debtor where there was no history of such payments and they were only promised on as "as needed" basis). Here, there is no non-debtor spouse, no legally binding commitment to pay, and no history of any prior payments to the Debtor. On the other hand, the Debtor and his family have submitted affidavits to support their offer to contribute to a Chapter 13 plan, and they allege that, as defendants in the two pending adversary proceedings, they have an economic interest in facilitating the Debtor's conversion to Chapter 13, and so encourage the Court to classify their contributions as non-gratuitous. But this Court, along with many others to have considered this issue, will always be reluctant to confirm a Chapter 13 plan, whose feasibility depends so significantly upon contributions from family members of a debtor, and where no legally binding obligation currently exists such that the lion's share of the required income stream is entirely promissory. Although the family's affidavits recite some recent income figures for the Debtor's would-be contributors, the information therein is insufficient for the Court to be confident of their ability to provide the level of funding they promise over such an extended period as proposed by the Plan. In light of all these factors, the Court finds that the Debtor has not met his burden of proof in adequately demonstrating the likelihood of a suffi-

ciently stable and assured source of income to fund the Plan as currently proposed. This is especially significant when the proposed Plan and its impact on creditors is compared with the case remaining in Chapter 7. The uncertainty for creditors inherent the proposed Plan contrasts with the relative certainty of a 100% dividend with interest to be paid out if the case remains in Chapter 7. Not only is the amount of the pay-out more certain but the timetable for payment is likely to be far superior from the creditors' perspective.

 Finally, important policy reasons favor creating incentives for debtors to be forthcoming about all of their assets. Debtors who desire the full benefits of bankruptcy relief must fully comply with their duties under the Bankruptcy Code. Failure to do so justifies denying them benefits they might otherwise enjoy, and there are many examples to be found in the case law. *Boroff v. Tully,* 818 F.2d 106, 110 (1st Cir.1987) (the very purpose of the Bankruptcy Code is to make certain that those who seek its shelter do not play fast and loose with their assets or with the reality of their affairs. The Code is designed to insure that complete, truthful, and reliable information is put forward at the outset of the case). Any other rule would permit an untruthful debtor to enjoy a risk-free attempt to evade his or her creditors. In other words, a debtor could lie on the petition about fraudulently conveyed or concealed assets and, if caught, avoid any consequence by converting to a Chapter 13 case. The Court must determine whether conversion under these circumstances is appropriate pursuant to the overall purpose and policy of the Bankruptcy Code, and although the Debtor's right to convert is nearly absolute, the matter remains within the discretion of the Court. *In re Krishnaya,* 263 B.R. at 65–

67. In this case, the misrepresentations in the Debtor's Schedules, and the tenuous nature of the Plan with its significant family contributions, coupled with the Debtor's filing of the Motion to Convert to escape the effects of the Chapter 7 Trustee's pending adversary proceedings, constitute circumstances sufficiently extreme to warrant denial of the Debtor's Motion. *In re Johnson,* 262 B.R. 75, 79 (Bankr.E.D.Ark. 2001) (extreme circumstances existed sufficient to deny conversion based upon debtor's lack of good faith, evidenced by misrepresentations in bankruptcy schedules, and debtor's improper motive in seeking conversion to avoid the effects of the trustee's pending fraudulent transfers claims). A separate order will enter consistent with this memorandum.

### ORDER ON DEBTOR'S MOTION TO CONVERT CASE TO CHAPTER 13

For the reasons stated in the memorandum of decision issued today, the Debtor's Motion to Convert Case to chapter 13 is hereby denied.