In re Robert Louis MARRAMA,
Debtor.

Robert Louis Marrama, Appellant,

v.

Citizens Bank of Massachusetts, and
Mark DeGiacomo, Chapter 7
Trustee, Appellees.

BAP No. MB 04–001.
Bankruptcy No. 03–11987–WCH.

United States Bankruptcy Appellate Panel
of the First Circuit.

Sept. 9, 2004.

David G. Baker, Charlestown, MA, on brief, for Appellant.

Jack J. Mikels, Quincy, MA, Michael A. Wirtz, Boston, MA, Janell E. DeGennaro, on brief, for Appellee Citizens Bank of Massachusetts.

Mark G. DeGiacomo, Boston, MA, Olga L. Bogdanov, Worcester, MA, on brief, for Appellee Mark G. DeGiacomo as Chapter 7 Trustee.

Before LAMOUTTE, VAUGHN, and CARLO, United States Bankruptcy Appellate Panel Judges.

LAMOUTTE, Bankruptcy Judge.

Robert Louis Marrama (the "Debtor" or the "Appellant") appeals the August 27, 2003 order (the "Order") entered by the United States Bankruptcy Court for the District of Massachusetts (the "bankruptcy court") denying his Verified Notice of Conversion to Chapter 13 (the "Notice"). The issue before the Panel is two-fold; that is, whether the bankruptcy court may deny a Chapter 7 debtor the right to convert a Chapter 7 case to Chapter 13, and if so,

whether the bankruptcy court was correct in doing so under the particular facts of this case. We affirm.

## BACKGROUND

On March 11, 2003, the Debtor filed a voluntary Chapter 7 petition and schedules. App. at 17.[1] Schedule A listed a "Residence in Gloucester, MA" (the "Massachusetts Property") as the Debtor's only real property. On Schedule B, the Debtor answered Question 18 by stating: "Debtor is 100% beneficiary of Bo–Mar Realty Trust [(the 'Trust')] the res of which is real property in Maine in which the debtor intends to live. Trust is a spendthrift trust." The current market value of the Debtor's interest in the Trust was listed as zero. On Schedule C, the Debtor claimed a homestead exemption in the Massachusetts Property, listing $300,000 as the maximum value of the claimed exemption, and $200,000 as the current market value of the property without deducting the exemption. Schedule C also provided: "The beneficial interest in the Bo–Mar Realty Trust is not property of the estate pursuant to 11 U.S.C. § 541(c)." Schedule I stated no income generated by real property, and listed a total combined monthly income of $5,762. Schedule J included total monthly expenses of $4,925.95. On March 24, 2003, the Debtor filed a motion to avoid the liens on the Massachusetts Property, arguing

that the same impaired his homestead exemption.

The § 341 meeting of creditors commenced on April 24, 2003, was continued over the course of several months, and concluded in November, 2003. *Id.* At the April 24, 2003 creditors' meeting,[2] the Debtor testified that he was currently residing at 47 Norton Avenue in York, Maine (the "Maine Property"), and that he had been doing so for a couple of months. Appellee's App. at 33. The Debtor further testified that his Massachusetts Property serves as rental property, generating a total of $2,150.00 a month beginning on May 1, 2003.[3] *Id.* at 34.

The Debtor testified that he had purchased the Maine Property several years ago, and had later conveyed it to the Trust for no consideration. *Id.* at 18, 37. The Debtor referred to the property as belonging to him, saying "I have a piece of property in Maine." *Id.* at 6. His attorney corrected him, explaining, "[t]hat's actually owned by the trust, right?" *Id.* When asked why he transferred the Maine Property into the Trust, the Debtor testified that he was trying to protect it. *Id.* at 37. The Debtor is the sole beneficiary of the Trust, and his girlfriend is the trustee. *Id.* at 16. The Trust contains a spendthrift clause and is revocable. *See id.* at 47. The transfer of the Maine Property to the

1. Citations to the Appendix refer to Appellant's Appendix, attached to his Brief. Although the pages of the Appendix are not sequentially numbered, said page numbers have been calculated by the Panel and the contents of the Appendix are referred to accordingly.

2. Although the transcript of the April 24, 2003 creditors' meeting was not before the bankruptcy court when it denied the Notice of Conversion, the bankruptcy court did hear arguments pertaining to matters that arose in that meeting. This Panel has previously al-

lowed the transcript of a § 341 creditors' meeting to be part of the record on appeal where matters pertaining to that meeting were presented in arguments to the bankruptcy court. *See Cabral v. Shamban (In re Cabral)*, 285 B.R. 563 (1st Cir. BAP 2002). In the *Cabral* case, the Panel had issued a pre-argument order denying the Appellee's motion to strike the transcript from the record.

3. The Massachusetts Property consists of two units; one renting for $1,500.00 and the other for $600.00. Appellee's App. at 34.

Trust was not disclosed in the Statement of Financial Affairs.

On June 23, 2003, the Debtor filed a Verified Notice of Conversion to Chapter 13 (the "Notice of Conversion"). App. at 17. In response to the Notice of Conversion, the Appellees each filed opposition pleadings. *Id.* Pointing out that the Debtor had claimed a homestead exemption in property where he did not reside, and that the Debtor had transferred the Maine Property into a trust for his own benefit which he failed to disclose on his bankruptcy schedules, the Trustee's opposition argued that the Debtor's request for conversion was made in bad faith with an intent to prevent the Trustee's recovery of assets on behalf of the estate. *Id.* at 2. The Trustee's opposition stated that the Debtor did not disclose the transfer of the Maine Property in response to Question 10 of the Statement of Financial Affairs or anywhere else in his bankruptcy petition. *Id.* The Debtor responded to the Trustee's opposition, denying the allegations of bad faith and asserting that the Maine Property had been properly disclosed on Schedule B. *Id.* at 6.

Citizens Bank, like the Trustee, argued that the Debtor's request for conversion lacked good faith, and added that such a conversion would result in abuse of the bankruptcy process. *Id.* at 9. In addition to the Trustee's arguments regarding the Maine Property, Citizens Bank's opposition asserted that the Debtor's Schedule I failed to disclose income generated by rental of the Massachusetts Property. *Id.* Citizens Bank's opposition further alleged that the Debtor had participated in improper, and possibly illegal, activity in connection with his company's assets, and that the Debtor had been uncooperative with regard to a civil action Citizens Bank had commenced to enforce collection of its loans and obtain equitable relief to seize the business records and manage the collection of the company's receivables. *Id.*

On August 11, 2003, the Debtor filed amended Schedules I and J. Amended Schedule I listed income from rental property of $1,500, bringing the Debtor's total combined monthly income up to $7,184.77. Amended Schedule J reflected an increase in monthly expenses, with a new total of $5,828.00.

On August 27, 2003, the bankruptcy court held a hearing on the Notice of Conversion (the "Hearing"). At the Hearing, the Appellees reiterated the arguments presented in their oppositions. *Id.* at 33. Specifically, the Trustee alleged that the Debtor failed to disclose on his Statement of Financial Affairs the transfer of his Maine Property into the Trust within a year of filing bankruptcy for the purpose of protecting it. The Trustee alleged that the transfer was a fraudulent transfer. The Trustee further argued that the Debtor failed to disclose in his schedules receipt of rental income from the Massachusetts Property or entitlement to a tax refund of $8,700 that the Trustee had recently learned about. The Trustee asserted that the Debtor decided to convert to Chapter 13 only after the Trustee informed him at the § 341 meeting that the Trustee would seek to recover the $85,000 of equity in the Maine Property.

Citizens Bank summarized the contentious state court litigation between itself and the Debtor, which was stayed at the discovery stage by the Debtor's bankruptcy filing. Citizens Bank explained that the Debtor had filed criminal complaints against two bank vice-presidents and the bank's attorney because they went to shut down the Debtor's company under court order. The bank further explained that the Debtor had avoided giving interrogatory or deposition testimony in the state court action as well as during his 2004 examination in the bankruptcy proceeding

by asserting his Fifth Amendment privilege.

The Debtor denied the allegations of bad faith, and argued that any omissions were inadvertent or of no harm to the estate. *Id.* Specifically, the Debtor explained that he had not started receiving rental income from the Massachusetts Property until after he filed his petition. The Debtor's attorney attributed the Debtor's failure to disclose the transfer of the Maine Property to his own scrivener's error, explaining that he had known about the transfer, but had inadvertently omitted it from the Statement of Financial Affairs. Regarding the tax refund, the Debtor asserted that he learned about it the same time the Trustee did. The Debtor also explained that he had not sought conversion to Chapter 13 because the Trustee was going to pursue recovery of assets; rather, he had sought conversion because he became employed subsequent to the filing of his Chapter 7 petition.

The bankruptcy court reasoned that there is no "oops" defense to concealment, and that filers have an obligation to provide accurate information. *Id.* The bankruptcy court further found that there is "a major presumption of bad faith when you have a grantor trust within a year of the bankruptcy and the property is not disclosed." *Id.* Comparing the present case to the recent *Fleury*[4] decision, the bankruptcy court concluded that "[t]his is a bad faith case," and denied the conversion. *Id.* This appeal followed.

### JURISDICTION

■ A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees pursuant to 28 U.S.C. § 158(a)(1), or with leave of the court, from interlocutory orders and decrees pursuant to 28 U.S.C. § 158(a)(3)." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.),* 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted). An interlocutory order "only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." *Id.* (quoting *In re American Colonial Broad. Corp.,* 758 F.2d 794, 801 (1st Cir.1985)). A bankruptcy appellate panel is duty-bound to determine its jurisdiction before proceeding to the merits even if not raised by the litigants. *See In re George E. Bumpus, Jr. Constr. Co.,* 226 B.R. 724 (1st Cir. BAP 1998).

■ The Panel finds that it has jurisdiction over this appeal pursuant to § 158(a)(1) as the bankruptcy court's order denying conversion to Chapter 13 constitutes a final order. *See Kuntz v. Shambam (In re Kuntz),* 233 B.R. 580, 582 (1st Cir. BAP 1999).

### STANDARD OF REVIEW

■ Appellate courts reviewing an appeal from the bankruptcy court generally apply the clearly erroneous standard to findings of fact and *de novo* review to conclusions of law. *See T I Fed. Credit Union v. DelBonis,* 72 F.3d 921, 928 (1st

---

4. *See In re Fleury,* 294 B.R. 1 (Bankr.D.Mass. 2003), *aff'd,* 306 B.R. 722 (1st Cir. BAP 2004). In *Fleury,* the bankruptcy court found that a Chapter 13 debtor had filed her petition in "bad faith" where she had failed to pay any divorce-related debt through a previous Chapter 13 case that had dissipated more than $350,000. Based on the finding of "bad faith," the bankruptcy court dismissed the case with prejudice to the debtor's ability to re-file for 360 days.

Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714, 719–20, n. 8 (1st Cir. 1994). Whether a bankruptcy court properly denied a debtor's request for conversion is a question of law requiring *de novo* review on appeal. *Kuntz*, 233 B.R. at 582.

## DISCUSSION

### I. Is there an absolute right to convert a Chapter 7 case to Chapter 13?

■ Section 706(a) of the Bankruptcy Code provides that:

> The [chapter 7] debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

11 U.S.C. § 706(a). The legislative history of § 706(a) characterizes the debtor's right to convert as "absolute," stating that "[s]ubsection (a) of this section gives the debtor the one-time absolute right of conversion of a liquidation case to a reorganization or individual repayment plan case." S.Rep. No. 95–989, at 94 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5880. This history has been found to reflect Congress' desire to encourage debtors to choose one of the reorganization chapters over Chapter 7. *Matter of Martin*, 880 F.2d 857, 859 (5th Cir.1989) ("The policy of the provision is that the debtor should always be given the opportunity to repay his debts.") (quoting H.Rep. No. 95–595, 95th Cong.2d Sess. 380, U.S.Code Cong. & Admin.News 1978, 5963, 6336).

However, this Panel has previously held that a debtor's one-time right to convert a Chapter 7 case to Chapter 13 is not absolute, but may be denied in extreme circumstances constituting bad faith. *See Kuntz*,

233 B.R. at 583 (citing *Matter of Martin*, 880 F.2d at 859, and *In re Calder*, 93 B.R. 739 (Bankr.D.Utah 1988)). It noted that "consistent with the underlying policy of § 706(a), courts which have considered the debtor's right to conversion vis-a-vis his actions during the Chapter 7 case have required a substantial showing prior to denying the request." *Id.* at 583. The Panel concluded that the circumstances in *Kuntz* were not sufficiently egregious to warrant a denial of conversion. *Id.* at 585.

In a subsequent decision, this Panel, relying on the rationale in *Kuntz*, held that the unrebutted facts were not only sufficient to raise an inference of bad faith under 11 U.S.C. § 1307(c), but also constituted "extreme circumstances" sufficient to deny conversion from Chapter 7 to Chapter 13 under § 706(a). *See Cabral v. Shamban (In re Cabral)*, 285 B.R. 563, 575 (1st Cir. BAP 2002). The factors found to constitute bad faith and extreme circumstances included the debtor giving misleading testimony at the § 341 meeting of creditors, substantial differences between the debtor's original and amended schedules, and the omission in the Chapter 13 plan and liquidation analysis of the likelihood of a substantial settlement offer of a personal injury claim. *Id.*

There is a split of authority among courts which have considered the issue as to whether the debtor's right to convert a case from Chapter 7 to Chapter 13 pursuant to 11 U.S.C. § 706(a) is "absolute" or subject to some measure of judicial discretion. While some courts and authors have characterized the different positions as the majority view or minority view, the Hon. David S. Kennedy has commented that "[i]t is somewhat difficult to determine at this time in the development of the decisional law which view actually represents the majority or minority of courts, especially considering the fact that conflicting

reported opinions substantiating the statutory right as an absolute one or qualified right seemingly appear in almost every new bankruptcy advance sheet." David S. Kennedy, "Current Controversies Centering Around a Debtor's Statutory and Procedural Right to Convert an Originally Filed Chapter 7 Case to a Case under Chapter 11 or 13 of the Bankruptcy Code and Related Matters", *18th Annual Current Developments in Hot & Emerging Areas,* Commercial Law League of America, October 16, 2003 (citing *In re Ponzini,* 277 B.R. 399, 404 n. 3 (Bankr.E.D.Ark. 2002) ("[T]his Court's review of recent rulings on this issue reveal a larger number of courts adopting what was previously referred to as the minority view (*i.e.* the view that a debtor does not have an absolute right to convert under § 706(a)), such that it is no longer clear which is the majority or minority view.")).

A substantial number of cases, including those from this Panel which have addressed the issue, have held that the right to convert from Chapter 7 to Chapter 13 is absolute only in the absence of extreme circumstances. *See, e.g., Matter of Martin,* 880 F.2d at 859 (courts refuse to interfere with right to convert in absence of extreme circumstances); *Martin v. Cox,* 213 B.R. 571 (E.D.Ark.1996), *aff'd,* 116 F.3d 480 (8th Cir.1997); *Cabral,* 285 B.R. at 575. The extreme circumstances approach requires the bankruptcy court to make a factual determination as to the existence of extreme circumstances, such as bad faith, abuse of process, or other gross inequity, and such cases typically involve egregious conduct on the part of the debtor, who is seeking to use the bankruptcy process abusively and selfishly rather than for its intended purpose. Kennedy, *supra,* at 296.

Other courts look at the totality of the circumstances surrounding the debtor's request to convert his case, balancing the purpose of, and policies underlying, Chapter 13, as well as the debtor's motivation in seeking conversion, and the reasons the debtor did not originally file under Chapter 13. Kennedy, *supra,* at 300 (citing *In re Gallagher,* 283 B.R. 604, 606 (Bankr. M.D.Fla.2002)). This approach is similar to the extreme circumstances approach, and many of the same factors overlap. Such factors may include whether the debtor is seeking to convert in good faith; whether the debtor can propose a confirmable Chapter 13 plan; the impact of denying conversion on the debtor weighed against the prejudice to creditors by allowing conversion; the effect of conversion on the efficient administration of the bankruptcy estate; and whether conversion will further an abuse of the bankruptcy process. Kennedy, *supra,* at 301 (citing *Pakuris,* 262 B.R. 330, 335–36 (Bankr.E.D.Pa. 2001)); *see also In re Marcakis,* 254 B.R. 77, 82 (Bankr.E.D.N.Y.2000) (court must consider possibility of abuse, prejudice to other parties or creditors, eligibility of the debtor, and all circumstances generally); *In re Krishnaya,* 263 B.R. 63 (Bankr. S.D.N.Y.2001).

■ In analyzing the debtor's good faith,[5] the court may consider whether the debtor has been forthcoming; whether the

---

5. The consideration of a debtor's good faith in converting a Chapter 7 case to Chapter 13 has been criticized by one commentator, who noted:

> The debtor's good faith in first filing a Chapter 7 case and then converting to Chapter 13 is most appropriately tested at confirmation under § 1325(a)(3) using the usual good-faith rules applicable in the circuit. No obvious good purpose is served by overlaying a whole new jurisprudence of good faith as a judge-imposed condition on conversion from Chapter 7 to Chapter 13. Keith M. Lundin, 4 *Chapter 13 Bankruptcy* § 325.1 at 325–14 (3d ed.2002).

debtor has failed to disclose potentially beneficial interests of non-bankruptcy litigation or has omitted assets from his schedules and statements; whether disclosure was prompted by an investigation by the trustee or the filing of dischargeability litigation; and whether the debtor has made a complete, reliable and full disclosure; as well as the timing of the motion to convert—that is, whether it occurs after the entry of the Chapter 7 discharge. Kennedy, *supra*, at 301–302 (citing *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir.1987); *In re Carter*, 285 B.R. 61, 67 (Bankr.N.D.Ga.2002); *Gallagher*, 283 B.R. at 607; *Pakuris*, 262 B.R. at 336; *In re Porter*, 276 B.R. 32, 37–38 (Bankr. D.Mass.2002) ("The Court must determine whether conversion under these circumstances is appropriate pursuant to the overall purpose and policy of the Bankruptcy Code, and although the Debtor's right to convert is nearly absolute, the matter remains within the discretion of the Court."); *In re Mosby*, 244 B.R. 79, 86 (Bankr.E.D.Va.2000); *In re Thornton*, 203

B.R. 648 (Bankr.S.D.Ohio 1996)). In *Boroff v. Tully*, the First Circuit, while noting that the statutory right to a discharge is generally construed in favor of the debtor, observed that the purpose of certain sections of the Bankruptcy Code is to make sure that "those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs" and to "insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction." 818 F.2d at 110.

■■■ The Panel concludes that a bankruptcy court may use the totality of the circumstances approach to determine whether the same are extreme and warrant denial of a Chapter 7 debtor's motion to convert to Chapter 13 under § 706(a).[6] The plain language of § 706(a), when read together with other sections of the Bankruptcy Code and Rules[7], does not grant a

---

**6.** In affirming the "totality of the circumstances" or "extreme circumstances" approach, this Panel rejects the application of § 105 to motions for conversion under § 706. While § 105 empowers the bankruptcy courts with broad equitable and discretionary powers to deal with situations not explicitly covered by the Bankruptcy Code, using § 105 to override the plain language of § 706 has been criticized by courts which hold that § 105(a) should not be used contrary to the clear wording of the Bankruptcy Code, its legislative history, and the Rules of Bankruptcy Procedure. *In re Rashid*, 97 B.R. 610, 615 (W.D.Okla.1989); *Official Comm. of Equity Sec. Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir.1987), *cert. denied*, 485 U.S. 962, 108 S.Ct. 1228, 99 L.Ed.2d 428 (1988); *United States v. Sutton*, 786 F.2d 1305, 1307–08 (5th Cir. 1986). The First Circuit has stated "section 105(a) does not provide bankruptcy courts with a roving writ, much less a free hand." *Jamo v. Katahdin Federal Credit Union (In re Jamo)*, 283 F.3d 392, 403 (1st Cir.2002) (bankruptcy court lacked power to modify a reaffirmation agreement or compel the par-

ties to enter into a judicially-crafted reaffirmation agreement). *Accord Holyoke Nursing Home, Inc. v. Health Care Fin. Admin. (In re Holyoke Nursing Home, Inc.)*, 372 F.3d 1, 5 (1st Cir.2004) ("[T]he equitable powers of the bankruptcy court do not accord it 'a roving commission to do equity,' nor 'authorize courts to create substantive rights that are otherwise unavailable under the Code.' ") (quoting *In re Ludlow Hosp. Soc'y, Inc.*, 124 F.3d 22, 27 (1st Cir.1997)).

**7.** For example, § 706(a) states that the court "may" convert a case at any time, while § 1307(b) states that the court "shall" dismiss a case upon request of the debtor at any time; "[t]he statute's use of the verb 'may' rather than 'shall' supports the view that the right granted by § 706(a) is presumptive rather than absolute." *Ponzini*, 277 B.R. at 404. Further, several courts have observed that Fed. R. Bankr.P. 1017(f)(2)'s requirements that conversion under § 706(a) be made on motion, filed and served as required by Fed. R. Bankr.P. 9013, along with Fed. R. Bankr.

debtor an absolute right to convert a case from Chapter 7 to Chapter 13; rather, the right to convert is presumptive and should be granted unless there are extreme circumstances showing that the debtor is abusing the jurisdiction of the bankruptcy court. While there is no specific test for determining "extreme circumstances" that constitute bad faith, one important factor is whether a debtor intentionally attempted to conceal assets from creditors. *See Cabral,* 285 B.R. at 574–75; *Kuntz,* 233 B.R. at 585.

## II. Are there extreme circumstances constituting bad faith in this case?

In *Kuntz,* the Panel concluded that a Chapter 7 debtor's three month delay in reporting a post-petition inheritance did not rise to the level of bad faith. *Kuntz,* 233 B.R. at 585. There, the Panel explained that there was no evidence to support the conclusion that the debtor intended to hide the asset or that he purposefully shielded the asset from his creditors. *Id.* Acknowledging that the three month delay may indicate a subjective bad faith on behalf of the debtor, the Panel noted that such an implication was tempered by several factors: the debtor's voluntary disclosure of the asset prior to entry of the discharge, his subsequent cooperation with the trustee, preservation of the asset, and prompt retention of a bankruptcy attorney for the purpose of filing a Chapter 13 plan. *Id.*

In *Cabral,* however, the Panel found that the debtor's actions did constitute extreme circumstances sufficient to deny conversion. *Cabral,* 285 B.R. at 575.

There, the debtor had given misleading testimony at the § 341 meeting, filed amended schedules that differed substantially from her original schedules, and failed to include in either her Chapter 13 plan or Liquidation Analysis any reference to the likelihood of a substantial settlement offer from a personal injury claim. *Id.* Such actions caused the bankruptcy court to conclude that the debtor "was attempting to manipulate the Bankruptcy Code and to conceal the value of her personal injury claim from her creditors." *Id.* at 574. In affirming the bankruptcy court's order reconverting the debtor's case back to Chapter 7,[8] the Panel held that the unrebutted facts not only raised the inference of bad faith for purposes of § 1307(c), but also constituted "extreme circumstances" which are sufficient to deny conversion of the case from Chapter 7 to Chapter 13 under § 706(a). *Id.* at 575.

In the instant case, the bankruptcy court, in denying the Debtor's request for conversion, concentrated on the Debtor's concealment of assets, or more specifically, on the concealment of the transfer of assets. The bankruptcy court stated that "there is an obligation on the part of people who file schedules in bankruptcy cases to get it right" and there is a "major presumption of bad faith when you have a grantor trust within a year of the bankruptcy and the property is not disclosed." App. at 41. The bankruptcy court concluded that "[t]his is a bad faith case." *Id.*

The Panel finds that the bankruptcy court's decision to deny conversion was sufficiently supported by the evidence be-

P.2002(a)(4)'s requirement of 20 days' written notice of a hearing on conversion, indicate that the "right" to convert under § 706(a) is not absolute. *Id.* at 405.

8. Unlike the instant case, in *Cabral* the bankruptcy court had converted the debtor's case

to Chapter 13 immediately upon receipt of the notice of conversion. Accordingly, the bankruptcy court treated the objections as motions for reconsideration of the conversion, and ultimately entered an order reconverting the case back to Chapter 7.

fore the court. The Debtor identified his interest in the Maine Property, denoting it as personal property on Schedule B at Question 18. The Debtor declared that "Debtor is 100% beneficiary of Bo–Mar Realty Trust the res of which is real property in Maine in which the debtor intends to live. Trust is a spendthrift trust." The Debtor valued his interest in the trust at zero. The Debtor did not, however, disclose in his answer to Question 10 on the Statement of Financial Affairs that he transferred the Maine Property into the trust within one year of the petition date. The Trustee's inquiry at the § 341 meeting into the nature of the trust and the transfer brought out the date of the transfer and that the Debtor had transferred his own property, for no consideration, into a revocable trust, for which his girlfriend was the trustee. At the same time, the Debtor also admitted that the transfer was made for the purpose of protecting the Maine Property. While the Debtor argued that the failure to list the transfer was a mistake, his failure to list it was consistent with his intent to protect it. Moreover, the Debtor did not seek to amend Schedule B and the Statement of Financial Affairs until September 15, 2003, that is, after the bankruptcy court denied his motion to convert to Chapter 13.

Other factors also support the bankruptcy court's decision to deny conversion. On March 11, 2003, when the Debtor filed this petition, he claimed a homestead exemption in the Massachusetts Property. On March 24, 2003, the Debtor filed a motion seeking to avoid liens on the Massachusetts Property as impairing his homestead exemption. He filed a memorandum in support of his motion on May 27, 2003. At the continuation of the § 341 hearing, held on April 24, 2003, the Debtor testified that he was residing at the Maine Property and had been doing so for a couple of months. The Debtor also testified that beginning on May 1, 2003, he would begin receiving rental income from the Massachusetts Property. Likewise, on Schedule B, the Debtor answered Question 18, indicating that he intended to live at the Maine Property. Thus, the Debtor's actions in claiming an exemption in the Massachusetts Property and seeking to avoid liens against it were not consistent with his intended and actual move to the Maine Property. We conclude that the Debtor attempted to obtain a homestead exemption in property in which he did not intend to reside.

Furthermore, the Debtor also failed to list the tax refund. In Schedule B, Item 17, the Debtor is directed to identify liquidated debts, including tax refunds. The Debtor's response, under oath, was "none." At the hearing on the request for conversion, Debtor's counsel contended that the Debtor filed an amended tax return in July of 2002, seeking the refund. Thus, his alleged lack of awareness of the refund is incompatible with the fact that he applied to the Internal Revenue Service for the refund.

Finally, the Debtor contends that he sought conversion because he became employed and began receiving rental income. However, prior to his request for conversion, the Trustee indicated his intention of seeking to recover the Maine Property. The Trustee also sought and obtained an extension of time to file a complaint objecting to discharge. Thus, the timing of the Debtor's request for conversion is suspect.

The Debtor's actions in the instant case were more egregious than the debtor's actions in *Kuntz*. Unlike the debtor in *Kuntz*, who simply delayed the disclosure of a post-petition asset, this Debtor appears to have taken affirmative attempts to conceal assets from creditors, beginning with the pre-petition transfer of the Maine Property into a revocable trust. Then, the

Debtor made affirmative misrepresentations on his schedules regarding his homestead exemption, the value of his interest in the Trust, and the rental income generated by the Massachusetts Property. Additionally, the Debtor did not initiate disclosure of the assets, and only did so when asked direct questions at the § 341 meeting. Thus, this Debtor did not take steps to preserve his assets for the benefit of his creditors like the debtor in *Kuntz* did; instead, the intent behind the Debtor's transfer of the Maine Property for no consideration was to preserve the asset for his personal benefit, and place it beyond the reach of his creditors.

Furthermore, while the debtor in *Cabral* acted egregiously in regard to concealment of one asset, this Debtor's actions are arguably more egregious because there seems to have been a pattern of attempts to conceal assets—a pattern that began before the Debtor filed his petition when he transferred the Maine Property for no consideration to the Trust, and continued post-petition until the Chapter 7 Trustee threatened action to recover the Maine Property. As has been stated by the United States Supreme Court, the opportunity provided by the bankruptcy law for a "fresh start" is limited to the "honest but unfortunate debtor." *Grogan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Accordingly, we resolve, in conformity with our prior decisions in *Kuntz* and *Cabral,* that the bankruptcy court has authority to deny a debtor's request for conversion to Chapter 13. The Panel is not persuaded to overturn the rationale of its previous decisions and find that the debtor's right to convert pursuant to 11 U.S.C. § 706(a) is absolute and not subject to any judicial discretion despite the circumstances of the conversion. The bankruptcy court was correct in denying the Debt-

or's request for conversion because of the existence of "extreme circumstances" constituting bad faith.

### CONCLUSION

For the reasons discussed above, the bankruptcy court's order denying the Notice of Conversion is AFFIRMED.