In re Nanette CABRAL, Debtor.

Nanette Cabral, Appellant,

v.

Stephen E. Shamban, Chapter 7 Trustee, Appellee.

BAP No. MB 02–031.
Bankruptcy No. 02–11945–JNF.

United States Bankruptcy Appellate Panel of the First Circuit.

Nov. 21, 2002.

Donald J. Bertrand, Watertown, MA, on brief for the Appellant.

Ann Brennan, Boston, MA, on brief for the Appellee.

Before LAMOUTTE, VAUGHN, and KORNREICH, U.S. Bankruptcy Appellate Panel Judges.

## INTRODUCTION

LAMOUTTE, Bankruptcy Judge.

This matter is before the Panel on an appeal from an order of the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court") allowing the Opposition of Stephen E. Shamban, Chapter 7 Trustee, to Debtor's Notice of Conversion to Chapter 13 Combined with Motion for Reconsideration (the "Opposition"), and reconverting the Debtor's Chapter 13 proceeding to a Chapter 7 proceeding. On appeal, the Debtor/Appellant, Nanette Cabral (the "Debtor"), questions, among other things, whether the Bankruptcy Court erred in allowing the Opposition and reconverting the case to Chapter 7 without conducting an evidentiary hearing, whether the factual representations presented by the Chapter 7 Trustee at the hearing formed a sufficient basis for reconversion of the case to Chapter 7, and whether the Debtor's Chapter 13 plan was insufficient due to the Debtor's failure to include an unliquidated personal injury claim. For the reasons set forth below, we affirm the order of the Bankruptcy Court.

## STATEMENT OF FACTS

### A. Bankruptcy Court Proceedings.

On March 18, 2002, the Debtor filed a petition for relief under Chapter 7 of the United States Bankruptcy Code.[1] On that same day, the Bankruptcy Court appointed the Appellee, Stephen E. Shamban, as the Chapter 7 Trustee of the bankruptcy estate (the "Trustee"). On April 16, 2002, the Trustee conducted a meeting of creditors pursuant to § 341 of the Bankruptcy Code.

On June 4, 2002, the Debtor filed a Notice of Conversion to Chapter 13. On the same date, the Bankruptcy Court terminated the Chapter 7 Trustee's involve-

---

**1.** All references to the "Bankruptcy Code" or the "Code" are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, et seq.

ment and appointed a Chapter 13 Trustee. On June 6, 2002, the Trustee filed his Opposition to the Debtor's Notice of Conversion to Chapter 13, combined with a motion for reconsideration of the conversion to Chapter 13. On June 7, 2002, the Bankruptcy Court issued an endorsement order stating that it would treat the Trustee's Opposition as a motion to reconsider conversion of this case from Chapter 7 to Chapter 13 and setting the matter for hearing.[2] On June 7, 2002, the Bankruptcy Court issued a Notice of Nonevidentiary Hearing regarding the Trustee's Opposition. On June 18, 2002, the Debtor filed, among other things, Amended Schedules E, I, and J, and a Chapter 13 plan. On June 20, 2002, the Bankruptcy Court conducted a nonevidentiary hearing on the Trustee's Opposition. At the conclusion of the hearing, the Bankruptcy Court granted the Trustee's Opposition and converted the case back to Chapter 7. The Trustee was reappointed as Chapter 7 Trustee on June 24, 2002. The Debtor filed a Notice of Appeal on June 27, 2002 appealing the June 20, 2002 order. The Bankruptcy Court issued a Memorandum of Decision on July 16, 2002.

## B. Background.

On March 18, 2002, the Debtor, who was then represented by Attorney John Sommerstein, filed a voluntary Chapter 7 petition in which she disclosed that she had filed a previous bankruptcy case. The Debtor filed her Schedules and Statement of Financial Affairs with her petition. On Schedule B—Personal Property, the Debtor listed as an asset a personal injury claim against David Alicea and J.B. Hunt Transport, Inc. with an unknown value.

She also disclosed that she was represented by the law firm of Quinn & Morris with respect to the personal injury claim. On Schedule C—Property Claimed As Exempt, the Debtor claimed certain federal exemptions, including payments for personal injuries in the amount of $17,425 pursuant to § 522(d)(11)(D). On Schedule F—Creditors Holding Unsecured Nonpriority Claims, the Debtor listed total unsecured debt in the amount of $46,292.

With respect to her income and expenses, the Debtor disclosed on Schedule I—Current Income of Individual Debtor, that her gross monthly income was $2,190 and her net monthly income was $1,698. Her monthly payroll deductions included taxes and social security ($452), insurance ($42) and retirement plan contributions ($198), and she received $200 per month as reimbursement for automobile expenses. On Schedule J—Current Expenditures of Individual Debtor, the Debtor listed total expenses of $2,053, resulting in a monthly income deficit of $355.

On April 16, 2002, the Trustee conducted a § 341 meeting of creditors. At the § 341 meeting, the Debtor gave sworn testimony about her assets and liabilities, including the personal injury claim. She testified that her personal injury claim arose out of an automobile accident, that she suffered a whiplash injury, that she was treated by a chiropractor, that she was not hospitalized, and that she recently had received a settlement offer in the range of $10,000—$15,000 for her personal injury claim. Concluding that the personal injury claim may have value, the Trustee decided to pursue it for the benefit of the estate.

---

2. The endorsement order provides:
 6/7/02. The Court shall treat this Opposition as a motion to reconsider conversion of this case from Chapter 7 to Chapter 13.
 The motion shall be heard on June 20, 2002 @ 10:00 a.m.
 *See* Appellant's Appendix at 112.

On May 29, 2002, approximately six weeks after the § 341 meeting, the Trustee filed a motion to appoint Quinn & Morris and McLucas & West, P.C. as special counsel, indicating that the Debtor had previously hired the two law firms as co-counsel with respect to the personal injury claim. On May 31, 2002, the Bankruptcy Court granted the motion. Thereafter, the Trustee discussed the status of the Debtor's personal injury claim with Attorney Michael A. West of McLucas & West, P.C., who informed him that the action was scheduled for trial in June, 2002 in the Chelsea Division of the Massachusetts Superior Court, that he had received a settlement offer of $85,000, that the Debtor had had neck surgery, and that she had incurred substantial medical bills.

On June 4, 2002, Attorney Donald J. Bertrand filed a Notice of Appearance as new bankruptcy counsel for the Debtor. On the same date, Attorney Bertrand filed the Debtor's Notice of Conversion to Chapter 13. On June 5, 2002, Attorney John Sommerstein withdrew as bankruptcy counsel for the Debtor.

On June 6, 2002, the Trustee filed a Motion to Extend Period for Objection to Discharge, as well his Opposition to the Debtor's Notice of Conversion. In his Opposition, the Trustee provided a brief summary of the Debtor's testimony at the § 341 meeting and his conversations with Attorney West regarding the personal injury claim. He also observed that due to the Debtor's monthly income deficit, she could not possibly propose a Chapter 13 plan. As indicated above, the Bankruptcy Court decided to treat the Trustee's Opposition as a motion to reconsider conversion of the case from Chapter 7 to Chapter 13.[3]

On June 18, 2002, three months after the Debtor filed her Chapter 7 petition and two days before the hearing on the Opposition, the Debtor filed an Amended Schedule E—Creditors Holding Unsecured Priority Claims, disclosing for the first time taxes owed to the Internal Revenue Service and the Massachusetts Department of Revenue totaling $8,805. Additionally, the Debtor filed Amended Schedules I and J. On Amended Schedule I—Current Income of Individual Debtor, the Debtor reported gross monthly income of $2,207 from her employment as a "Crime Investigator," plus additional income of $210 from "part-time contract work" and $220 from reimbursed automobile expenses. The Debtor's payroll deductions also changed. She listed deductions for payroll taxes and social security in the amount of $371 ($81 less than previously reported), insurance in the amount of $41, and retirement plan contributions of $199. Thus, the Debtor's amended schedules reflected net monthly income of $2,026, an amount $328 more than previously reported. On Amended Schedule J—Current Expenditures of Individual Debtor, the Debtor listed expenses which were $320 per month less than previously reported (reduction in rent of $200 per month, as well as reduced payments for support of dependents, utilities, clothing, and miscellaneous expenses). Between increasing her income and reducing her expenses, the Debtor was able to eliminate her earlier $355 deficit and report excess income of $293.

Based upon her excess monthly income, the Debtor filed a Chapter 13 plan on June

---

3. As noted by the Trustee in his Opposition, it appears that the Bankruptcy Court immediately acted upon its receipt of the Debtor's Notice of Conversion, and, therefore, at the time the Trustee filed his Opposition, the case was already in Chapter 13. The Bankruptcy Court decided, therefore, to treat the Opposition as a motion to reconsider conversion of this case from Chapter 7 to Chapter 13.

18, 2002. In her plan, the Debtor proposed to pay a 15% dividend to unsecured creditors whose claims totaled $46,292. The Debtor attached a Liquidation Analysis to her Chapter 13 plan, in which she valued her assets at $7,200, the same sum used in her original Schedule B. She did not mention her personal injury claim in either her Chapter 13 plan or in the Liquidation Analysis.

On June 20, 2002, the Bankruptcy Court conducted a nonevidentiary hearing on the Trustee's Opposition. After hearing from the parties, the Bankruptcy Court concluded that the Debtor's conversion of her case to Chapter 13 and her omission of any reference to the likelihood of a substantial settlement offer in her Chapter 13 plan, when coupled with her misleading testimony at the § 341 meeting and previous filing, compelled the inference that the Debtor was attempting to conceal the value of her personal injury claim from her creditors. Therefore, the Bankruptcy Court reconverted the case to Chapter 7. The Debtor filed a Notice of Appeal on June 27, 2002 appealing the June 20, 2002 order.

On July 18, 2002, the Trustee filed a Motion to Strike Transcript of § 341 Meeting from the Appellate Record (the "Motion to Strike"), which was properly forwarded to this Panel for disposition. The Trustee argued that the transcript of the § 341 meeting should not be part of the record before the Panel since it was not part of the record before the Bankruptcy Court when it decided to reconvert the

case to Chapter 7. On September 27, 2002, this Panel entered an order denying the Trustee's Motion to Strike, allowing the transcript to remain a part of the appellate record.[4]

## STANDARD OF REVIEW

■ Appellate courts reviewing an appeal from the Bankruptcy Court generally apply the clearly erroneous standard to findings of fact and *de novo* review to conclusions of law. *See T I Fed. Credit Union v. DelBonis,* 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.),* 43 F.3d 714, 719–20 n. 8 (1st Cir. 1994).

■ A bankruptcy court's decision to dismiss or convert a case under § 1307(c) is reviewed for an abuse of discretion. *See Leavitt v. Soto (In re Leavitt),* 171 F.3d 1219, 1222–23 (9th Cir.1999); *see also Ho v. Dowell (In re Ho),* 274 B.R. 867, 870–71 (9th Cir. BAP 2002). A court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact. *Ho v. Dowell,* 274 B.R. at 871. A finding of bad faith, as a basis for granting a motion to convert or dismiss under § 1307(c), is reviewed for clear error. *Leavitt,* 171 F.3d at 1223. The clearly erroneous standard requires this Panel to give great deference to the Bankruptcy Court as the trier of fact. Under this standard, a finding is clearly erroneous when although there is evidence to support it, the reviewing court

---

**4.** The Panel reasoned that although the transcript may not have been considered by the Bankruptcy Court, the Bankruptcy Court may have considered statements from that transcript through the argument of counsel. Moreover, the Panel noted that the purpose of a record is to provide an adequate basis for evaluating an appellant's claims on appeal. Therefore, the Panel allowed the transcript to remain a part of the appellate record. The

Panel noted, however, that the effect of the transcript, if any, on the proceedings below, would be determined in connection with the appeal. As discussed below, it is clear that the Bankruptcy Court relied upon the Trustee's uncontested representations of what occurred at the § 341 meeting. Consequently, the inclusion of the transcript of that meeting in the record had no bearing on the outcome of this appeal.

on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *see also Gray v. Travelers Ins. Co. (In re Neponset River Paper Co.),* 231 B.R. 829, 830 (1st Cir. BAP 1999). If the trial court's account of the evidence is plausible in light of the record reviewed in its entirety, a reviewing court may not reverse even if convinced that it would have weighed the evidence differently as a trier of fact. *Anderson,* 470 U.S. at 574, 105 S.Ct. 1504.

### *JURISDICTION*

 The bankruptcy appellate panel has jurisdiction to hear appeals from "final judgments, orders, and decrees" pursuant to 28 U.S.C. § 158(a)(1) or, "with leave of the court, from interlocutory orders and decrees" pursuant to 28 U.S.C. § 158(a)(3). *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.),* 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted). An interlocutory order "'only decides some intervening matter pertaining to the cause, and which requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.'" *Id.* (*quoting In re American Colonial Broad. Corp.,* 758 F.2d 794, 801 (1st Cir.1985)). Orders converting a Chapter 13 case to a case under Chapter 7 are final orders. *See Maquoketa State Bank v. Hayes (In re Hayes),* 220 B.R. 57, 62 (N.D.Iowa 1998) (order granting a motion to convert a case from Chapter 13 to Chapter 7 is final because it denies the debtor her substantive right to proceed under Chapter 13) (*citing In re Rebeor,* 89 B.R. 314 (Bankr.N.D.N.Y.1988); *In re Firstcent Shopping Center, Inc.,* 141 B.R. 546 (S.D.N.Y.1992)). Similarly, orders denying a debtor's request to convert from Chapter 7 to Chapter 13 pursuant to § 706(a) are final orders. *See generally Kuntz v. Shambam (In re Kuntz),* 233 B.R. 580, 580–81 (1st Cir. BAP 1999).

### *ISSUES ON APPEAL*

1. Whether the factual representations by the Trustee formed a sufficient basis for reconversion of the case to Chapter 7.

2. Whether the Bankruptcy Court erred in reconverting the case to Chapter 7 without an evidentiary hearing and relying on the Trustee's factual representations, and whether the Trustee's Opposition gave the Debtor adequate notice regarding the issue of bad faith.

3. Whether the Debtor's Chapter 13 Plan is insufficient due to the Debtor's failure to include the unliquidated personal injury claim.

### *DISCUSSION*

**I. Whether the factual representations by the Trustee formed a sufficient basis for reconversion of the case to Chapter 7.**

#### A. *Applicable Statutory Provision.*

 The Panel notes that the Bankruptcy Court conducted its analysis under § 1307(c), making a determination of whether there was sufficient "cause" to warrant reconversion of the Chapter 13 case to one under Chapter 7. This is noteworthy because the Bankruptcy Court specifically indicated in its endorsement order that it was considering the Trustee's Opposition as a motion to reconsider conversion of this case from Chapter 7 to Chapter 13, which would seem to invoke an analysis of whether it was appropriate to convert from Chapter 7 to Chapter 13 in the first place

under § 706(a). The Bankruptcy Court, however, approached the case as one where the case was converted to Chapter 13 "as of right," and then conducted an analysis of whether the Chapter 13 case should be "reconverted" to Chapter 7 pursuant to § 1307(c). According to at least one court, the distinction may be one of form, rather than substance. *See In re Tardiff,* 145 B.R. 357, 360 n. 14 (Bankr. D.Me.1992). Circumstances which justify reconversion may be adequate to deny conversion in the first place. *Id.* (*citing Finney v. Smith (In re Finney),* 141 B.R. 94 (E.D.Va.1992), *aff'd,* 992 F.2d 43 (4th Cir.1993)). Both statutes are discussed below.

## B. *Section 1307(c).*

Section 1307(c) provides that on request by a party-in-interest, after notice and a hearing, the court may dismiss a case under Chapter 13 or convert the case to a Chapter 7 case, whichever is in the best interests of the creditors and the estate, *for cause.* The statute enumerates a non-exclusive list of reasons including: (i) unreasonable delay by the debtor that is prejudicial to the creditors, 11 U.S.C. § 1307(c)(1); (ii) failure to commence making timely payments under § 1326, 11 U.S.C. § 1307(c)(4); and (iii) denial of confirmation of a plan under § 1325, 11 U.S.C. § 1307(c)(5). Although lack of good faith is not specifically enumerated as "cause," it is well established that lack of good faith (or bad faith) is "cause" for dismissal or conversion of a Chapter 13 case under § 1307(c). *See Ho v. Dowell,* 274 B.R. at 877; *see also Leavitt,* 171 F.3d at 1224.

The obligation of good faith is imposed on the debtor at two stages of a Chapter 13 proceeding. First, the debtor must file her Chapter 13 petition in good faith. *See In re Love,* 957 F.2d 1350, 1354–55 (7th Cir.1992). Second, the debtor must file her Chapter 13 plan in good faith. *See id.; see also* 11 U.S.C. § 1325(a)(3). The term "good faith" is not defined, and, therefore, the good faith inquiry is a "fact intensive determination better left to the discretion of the bankruptcy court." *Love,* 957 F.2d at 1355. Courts differ in their approach in determining a debtor's good faith, but the majority favor a totality of the circumstances analysis. *See, e.g., Leavitt,* 171 F.3d at 1224 (bad faith as cause for dismissal of Chapter 13 petition involves application of a totality of the circumstances test); *Ho v. Dowell,* 274 B.R. at 879 ("[A]ny finding of § 1307(c) 'cause' would require a totality of the circumstances analysis followed by, if 'cause' is found, consideration of whether conversion or dismissal is in the best interests of creditors and the estate."); *Love,* 957 F.2d at 1355 (bankruptcy courts must look at the totality of the circumstances on a case-by-case basis when determining good faith); *see also Mason v. Young (In re Young),* 237 F.3d 1168, 1174 (10th Cir. 2001) (determination of good faith is made on a case-by-case basis, looking at the totality of the circumstances); *In re Lilley,* 91 F.3d 491, 496 (3d Cir.1996) (good faith of Chapter 13 filings must be assessed on a case-by-case basis in light of the totality of the circumstances); *Solomon v. Cosby (In re Solomon),* 67 F.3d 1128 (4th Cir.1995) (affirming totality of the circumstances standard); *In re Schaitz,* 913 F.2d 452 (7th Cir.1990) (good faith analysis under Chapter 13 depends on the totality of the circumstances). In this circuit, although the Panel has not specifically adopted a totality of the circumstances approach in determining lack of good faith for purposes of § 1307(c), it has agreed that an examination of the relevant surrounding circumstances is appropriate in determining lack of good faith. *See In re Keach,* 243 B.R. 851 (1st Cir. BAP 2000).

In applying the totality of the circumstances test to determine whether a Chapter 13 *petition* has been filed in bad faith, bankruptcy courts generally consider the following factors: (1) whether the debtor misrepresented facts in her petition, unfairly manipulated the Bankruptcy Code, or otherwise filed her Chapter 13 petition in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor only intended to defeat state court litigation; and (4) whether egregious behavior is present. *See Ho v. Dowell,* 274 B.R. at 876 (citations omitted). A finding of bad faith does not require fraudulent intent by the debtor. *Id.*

> Neither malice nor actual fraud is required to find a lack of good faith. The bankruptcy judge is not required to have evidence of debtor ill will directed at creditors, or that debtor was affirmatively attempting to violate the law—malfeasance is not a prerequisite to bad faith.

*Id.* (citations omitted).

In addition, courts have articulated the following factors in analyzing whether a Chapter 13 *plan* has been filed in good faith: (1) the debtor's accuracy in stating her debts and expenses; (2) the debtor's honesty in the bankruptcy process, including whether she has attempted to mislead the court and whether she has made any misrepresentations; (3) whether the Bankruptcy Code is being unfairly manipulated; (4) the type of debt sought to be discharged; (5) whether the debt would be dischargeable in a Chapter 7; and (6) the debtor's motivation and sincerity in seeking Chapter 13 relief. *See, e.g., Education Assistance Corp. v. Zellner,* 827 F.2d 1222, 1227 (8th Cir.1987).

Conducting a totality of the circumstances test, the Bankruptcy Court found that the Debtor converted her case to Chapter 13 in bad faith and also proposed her Chapter 13 plan in bad faith. *See* Appellant's Appendix at 84. The Debtor argues that the Bankruptcy Court's finding of cause due to bad faith is not supported by the record.

At the June 20, 2002 hearing, the Bankruptcy Court determined that: "The debtor has mishandled the case, has not been upfront in disclosing her assets or liabilities. The new plan is not confirmable. It doesn't even make reference to a cause of action. As far as I'm concerned, her omissions and her actions in the case have been concealment of assets, and that's bad faith, and I reconvert the case to Chapter 7." *See* Appellant's Appendix at 76. In its Memorandum of Opinion, the Bankruptcy Court examined certain undisputed facts. First, the Bankruptcy Court noted the following: "At the 341 meeting, the Debtor represented that her personal injury claim arose out of an automobile accident, that she suffered a whiplash injury, that she was treated by a chiropractor, that she was not hospitalized, and that she had received a settlement offer in the range of $10,000 to $15,000 for her personal injury claim." *Id.* at 80–81. The Bankruptcy Court then observed that the Trustee had discussed the status of the Debtor's personal injury claim with Attorney Michael A. West, who informed him that he had received a settlement offer of $85,000, that the Debtor had had neck surgery, and that she had incurred substantial medical bills. *Id.* at 81–82. The Bankruptcy Court also noted the differences between the liabilities and assets set forth in the Debtor's original schedules, which reflected a monthly income deficit of $355, and those set forth in her amended schedules, which, in three months, suddenly reflected a monthly income excess of $293. *Id.* at 83. Moreover, the Bankruptcy Court noted that the Debtor had attached a Liquidation

Analysis to her Chapter 13 plan, and that she valued her assets at $7,200, the same sum used in her original Schedule B. However, the Debtor did not disclose, or even mention, her personal injury claim in the Liquidation Analysis of her Chapter 13 plan. *Id.*

Significantly, it does not appear that any of the foregoing facts were actually disputed by the Debtor at the June 20, 2002 hearing. At the hearing, the Bankruptcy Court asked the Debtor's counsel why it should not draw inferences based on the Debtor's inaccurate statements at the § 341 meeting. The Debtor's counsel responded that he was not present at the § 341 meeting and had no transcript of that meeting. *Id.* at 73. This argument is without merit, however, since the Trustee's Opposition clearly put the Debtor on notice that the accuracy of her representations at the § 341 meeting were at issue. The Debtor's counsel should have obtained a copy of the transcript prior to the June 20, 2002 hearing. Thus, although the Debtor's counsel had the opportunity to rebut the inferences drawn from the Debtor's inaccurate § 341 statements, he failed to do so.

The Bankruptcy Court found that, based on unrebutted facts presented at the hearing, as well as those set forth in the Trustee's Opposition, the Debtor "misrepresented the nature and extent of the personal injuries she suffered and misled parties in interest and the [Bankruptcy] Court about the value of her personal injury claim . . . ." *Id.* at 84–85. Therefore, the Bankruptcy Court concluded:

Her conversion of her case to Chapter 13 and her omission of any reference to the likelihood of a substantial settlement offer in her Chapter 13 plan, when coupled with her misleading testimony at the § 341 meeting and previous filing, compel but one inference: the Debtor

was attempting to manipulate the Bankruptcy Code and to conceal the value of her personal injury claim from her creditors to their detriment. Under the circumstances of this case, conversion of her case from Chapter 13 to Chapter 7 was in the best interests of creditors and the estate.

*Id.* at 84–85.

The Bankruptcy Court's factual findings are supported by the record and do not engender a "definite and firm conviction that a mistake has been made." *See Anderson*, 470 U.S. at 573, 105 S.Ct. 1504. Accordingly, we affirm the Bankruptcy Court's decision.

## C. *Section 706(a).*

■■■■■ Section 706(a) of the Bankruptcy Code provides that a Chapter 7 debtor has a one-time right to convert her case to one under another chapter for purposes of reorganization or repayment to creditors. This provision reads:

The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

11 U.S.C. § 706(a). The legislative history indicates that the policy behind this section is that the debtor should be given the opportunity to repay his debts:

Subsection (a) of this section gives the debtor one absolute right of conversion of a liquidation case to a reorganization or individual repayment plan case. If the case has already once been converted from chapter 11 or 13 to chapter 7, then the debtor does not have that right. The policy of the provision is that the debtor should always be given the opportunity to repay his debts.

*Kuntz,* 233 B.R. at 582 (*quoting* S. REP. NO. 989, 95th Cong., 2d Sess. 380, U.S.Code Cong. & Admin.News 1978, p. 5787).

Although courts have consistently recognized a debtor's one-time right to conversion under § 706(a), some courts, including the Bankruptcy Appellate Panel for the First Circuit, hold that the right of conversion is not unlimited and may be denied in "extreme circumstances." *See, e.g., Kuntz,* 233 B.R. at 583 (citations omitted). These courts generally require a substantial showing prior to denying conversion, such as a finding that the debtor acted in subjective bad faith, where conversion would be objectively futile or result in an abuse of process, or some other gross inequity. *See id.* at 585 (conversion may be denied in extreme circumstances constituting bad faith); *see also In re Porter,* 276 B.R. 32, 39 (Bankr.D.Mass.2002) (misrepresentations in debtor's schedules and tenuous nature of plan, coupled with debtor's filing of conversion motion to escape pending adversary proceedings, were circumstances sufficiently extreme to warrant denial); *In re Thornton,* 203 B.R. 648 (Bankr.S.D.Ohio 1996) (request for conversion denied where evidence supported debtor's lack of good faith); *In re Jeffrey,* 176 B.R. 4, 4–5 (Bankr.D.Mass.1994) (right of conversion is not unlimited and may be denied where debtor has acted in bad faith or where conversion would result in an abuse of process or other gross inequity); *In re Tardiff,* 145 B.R. 357 (Bankr.D.Me. 1992) (conversion should not be permitted where debtor cannot demonstrate good faith); *In re Spencer,* 137 B.R. 506, 510–14 (Bankr.N.D.Okla.1992) (Section 706(a) permits conversion from Chapter 7 to Chapter 13 in the absence of extreme circumstances amounting to bad faith, imposition on the court's jurisdiction, abuse of process, or other gross inequity); *In re Lilley,* 29 B.R. 442 (1st Cir. BAP 1983) (conver-sion to Chapter 13 should not be permitted where the debtor is incapable of proposing a feasible plan).

■ As set forth above, there are many facts which, when considered together, compelled the Bankruptcy Court to infer bad faith, including the Debtor's misleading testimony at the § 341 meeting, the substantial differences between the liabilities and assets set forth in the Debtor's original schedules, which reflected a monthly income deficit, with those set forth in her amended schedules, which reflected a monthly income excess, and the omission of any reference in the Chapter 13 plan or Liquidation Analysis to the likelihood of a substantial settlement offer from the personal injury claim. These unrebutted facts not only raise the inference of bad faith for purposes of § 1307(c), but also constitute "extreme circumstances" which are sufficient to deny conversion of the case from Chapter 7 to Chapter 13 under § 706(a). Accordingly, we affirm the Bankruptcy Court's decision.

II. **Whether the Bankruptcy Court erred in reconverting the case to Chapter 7 without an evidentiary hearing and relying on the Trustee's factual representations, and whether the Trustee's Opposition gave the Debtor adequate notice regarding the issue of bad faith.**

A. *Type of Hearing.*

■ Section § 1307(c) provides that the bankruptcy court may convert a Chapter 13 case "after notice and a hearing." 11 U.S.C. § 1307(c). The Bankruptcy Code provides that the words "after notice and a hearing" mean "such notice as is appropriate in the particular circumstances and such opportunity for a hearing as is appropriate in the particular circumstances." 11 U.S.C. § 102(1)(A). The con-

cept of "notice and a hearing" is a flexible one. *See Credit Alliance Corp. v. Dunning–Ray Ins. Agency, Inc. (In re Blumer)*, 66 B.R. 109, 113 (9th Cir. BAP 1986), *aff'd*, 826 F.2d 1069 (9th Cir.1987); *see also* 5 COLLIER ON BANKRUPTCY, ¶ 1300.12[1], at 1300–46 (15th ed.1985) ("It is a concept of elastic design that may be shaped to conform to the exigency of the circumstances."). The bankruptcy judge has discretion in determining if the circumstances satisfy the notice and hearing requirement. *Finney*, 141 B.R. at 101.

The Debtor argues that the Bankruptcy Court erred in reconverting the Chapter 13 case to Chapter 7 without conducting an evidentiary hearing and relying on the Trustee's factual representations. The Debtor does not offer any case law to support this position. However, courts in various circuits have held that evidentiary hearings are not always required when a bankruptcy court dismisses or converts a bankruptcy case. *See C–TC 9th Ave. Partnership v. Norton Co. (In re C–TC 9th Ave. Partnership)*, 113 F.3d 1304 (2d Cir. 1997) (finding it was within the bankruptcy court's discretion to decide bad faith issue and dismiss case without a formal evidentiary hearing); *Blaise v. Wolinsky (In re Blaise)*, 219 B.R. 946 (2d Cir. BAP 1998) (finding that the "notice and hearing" requirement of § 1307(c) does not mandate evidentiary hearing); *see also Prebor v. Collins (In re I Don't Trust)*, 143 F.3d 1 (1st Cir.1998) (concluding that evidentiary hearing is not required under § 330(a)(1)(A) as long as the parties had a fair opportunity to offer relevant facts and arguments to the court and to confront their adversaries' submissions); *Powers v. America Honda Finance Corp.*, 216 B.R. 95 (N.D.N.Y.1997) (finding that "notice and hearing" requirement of § 362(d) does not mandate evidentiary hearing).

In *Blaise*, the appellant-debtor appealed the bankruptcy court's decision to convert its Chapter 13 case to a Chapter 7 case pursuant to § 1307(c). Specifically, the appellant argued that the bankruptcy court abused its discretion in converting the case since it made no findings of fact, heard no oral testimony and rendered its decision on inadmissible evidence. 219 B.R. at 947–48. The bankruptcy appellate panel rejected this argument. First, the panel noted that affidavits in support of the motion to convert revealed, among other things, that the debtor had failed to disclose assets, sold property of the estate without court approval, and failed to make any payments under his Chapter 13 plan. According to the panel, Fed.R.Civ.P. 43(e), made applicable to bankruptcy cases under Fed. R. Bankr.P. 9017, provides that the court may hear motions on affidavits presented by the respective parties or may direct the matter to be heard wholly or partly on oral testimony or deposition. *Id.* at 949.

> Motions may be decided wholly on the papers, and usually are. A proceeding to dismiss a case or convert a case to another chapter is a contested matter to be heard upon motion. Fed. R. Bankr.P. 1017(d) and 9014. Thus, a court may rely upon affidavits in a proceeding to convert or dismiss.

*Id.* (citations omitted). Therefore, the panel found that the bankruptcy court was justified in relying upon affidavits in a proceeding to convert or dismiss.

The panel also rejected the appellant's argument that the bankruptcy court erred in not conducting an evidentiary hearing on the conversion motion. The panel noted that, although § 1307(c) requires "notice and a hearing," this phrase means "such opportunity for a hearing as is appropriate in the particular circumstances." *Id.* (citing 11 U.S.C. § 102(1)(A)). Accord-

ing to the panel, the appellant had the opportunity to contest the conversion motion at the hearing but he essentially left undisputed the creditor's core allegations. Therefore, an evidentiary hearing was not required. *Id.* Furthermore, the panel noted the well-established general rule that an appellate court will not consider an issue raised for the first time on appeal. *Id.* Noting that at no time did the appellant request an evidentiary hearing, the panel concluded that the debtor could not complain about the lack of an evidentiary hearing on appeal. *Id.*

*C–TC 9th Ave. Partnership* involved a bankruptcy court's dismissal of a Chapter 11 case under § 1112 of the Bankruptcy Code due to the debtor's bad faith in filing the petition.[5] 113 F.3d 1304. The appellant argued, among other things, that due process mandates the holding of an evidentiary hearing before bad faith can be determined for purposes of dismissal of a Chapter 11 case under § 1112. The court of appeals rejected this argument, finding that "[w]hen the record is sufficiently well developed to allow the bankruptcy court to draw the necessary inferences to dismiss a Chapter 11 case for cause, the bankruptcy court may do so." *Id.*

In *In re I Don't Trust,* the bankruptcy court granted a motion by the appellees, the Chapter 11 trustee and his counsel, for fees and costs without conducting a hearing. 143 F.3d at 2. The appellant subsequently moved for reconsideration and for the first time requested a hearing. The bankruptcy court, after hearing oral arguments, refused to alter its earlier order. On appeal, the appellant argued, among other things, that the bankruptcy court erred in failing to hold an immediate evidentiary hearing on the matter. The First

Circuit rejected this argument. The First Circuit noted that the words "after notice and a hearing" in § 330(a)(1)(A) of the Bankruptcy Code denotes notice and an opportunity for a hearing as appropriate in the particular circumstances, but that a hearing—much less an evidentiary hearing—is not required in every instance, such as where a hearing is not seasonably requested by a party in interest. *Id.* at 3 (*citing* 11 U.S.C. § 102(1)(A)). The First Circuit found that, although the bankruptcy court did not initially conduct a hearing on the appellees' fee motions, the "notice and hearing" requirement was fulfilled since the appellant had an opportunity to be heard on its motion for reconsideration of the fee award. *Id.* The First Circuit further stated: "That the hearing did not involve live testimony is beside any relevant point, for [the appellant] never specifically requested that the bankruptcy court hold an evidentiary hearing." *Id.* at 4.

In the present case, although the Trustee did not submit any affidavits to support his allegations, it is clear from a review of the record that the Debtor failed to raise any disputed facts, and, even more importantly, failed to request an evidentiary hearing. The Bankruptcy Court specifically noted in footnote 1 of its Memorandum of Decision, that "[n]either counsel to the Debtor nor the Trustee indicated that there were facts in dispute or requested an opportunity to present evidence at the hearing held on June 20, 2002." Appellant's Appendix at 79. Clearly, the parties had an opportunity to present relevant facts and arguments to the Bankruptcy Court, and the Debtor cannot now complain about the lack of an evidentiary hearing. The Debtor's acquiescence to the Trustee's presentation under the unambiguous cir-

---

**5.** Since the "notice and hearing" requirements of § 1112 (dismissal or conversion of Chapter 11 cases for cause) are identical to

those of § 1307(c) (dismissal or conversion of Chapter 13 cases for cause), this case is relevant to the present case.

cumstances of a nonevidentiary hearing was a waiver which resulted in the admission of the Trustee's factual representation as evidence. The Bankruptcy Court was justified in relying upon her silence as an admission of fact.

In addition, the Debtor's argument that the Bankruptcy Court erred in relying on the Trustee's factual representations must fail. As set forth above, at the June 20, 2002 hearing, the Trustee identified for the Bankruptcy Court certain statements made by the Debtor at her § 341 meeting about her personal injury claim, based on his recent review of the audiotape of the § 341 meeting. These statements, the Trustee argued, conflicted with statements made by Attorney West and established that the Debtor was attempting to mislead the Trustee by under-representing the value of the claim. Since the proffer made by the Trustee was uncontested, the Bankruptcy Court was justified in relying upon the Trustee's representations and drawing inferences from them. Moreover, the transcript of the § 341 meeting, which is a part of the appellate record, supports the proffers of the Trustee.

Accordingly, we find that the Bankruptcy Court did not err in reconverting the case to Chapter 7 without an evidentiary hearing and relying on the Trustee's factual representations.

### B. *Notice of Bad Faith.*

The Debtor also argues that because the Trustee's Opposition did not use the words "bad faith," she did not receive reasonable notice that the accuracy of her § 341 statements would be at issue at the June 20, 2002 hearing.

■ As set forth above, "notice" is a statutory requirement of § 1307(c). The Bankruptcy Code provides that reasonable notice is "such notice as is appropriate in the particular circumstances." 11 U.S.C.

§ 102(1)(A). Moreover, notice is not only a statutory requirement under § 1307(c), it is a constitutional requirement as well. *See Great Pacific Money Markets, Inc. v. Krueger (In re Krueger),* 88 B.R. 238 (9th Cir. BAP 1988). The Due Process Clause contained in the Fourteenth Amendment to the United States Constitution guarantees fair process. *See* U.S. CONST. amend. XIV, § 1. Due process requirements apply in bankruptcy cases. *See Wright v. Union Central Life Ins. Co.,* 304 U.S. 502, 518, 58 S.Ct. 1025, 82 L.Ed. 1490, *reh'g denied,* 305 U.S. 668, 59 S.Ct. 56, 83 L.Ed. 433 (1938). In order to satisfy due process requirements, "the notice [of the proceedings] must be of such nature as reasonably to convey the required information...." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (citations omitted).

■ In the present case, the Debtor was given sufficient notice to satisfy the foregoing statutory and constitutional notice requirements. It is hard to understand how the Debtor can argue that she did not have adequate notice of the issue of bad faith. As set forth above, the Trustee's pleading was both an objection to the Debtor's conversion to Chapter 13—he was arguing that the Debtor did not have an automatic right to convert to Chapter 13—and, in the alternative, a request for reconversion of the case. Therefore, the Trustee requested three alternative forms of relief: (i) denial of the conversion to Chapter 13 (invoking § 706(a)); (ii) reconsideration of the order converting the case to Chapter 13 (invoking § 706(a)), or (iii) reconversion to Chapter 7 (invoking § 1307(c)). Section 1307(c) permits conversion of a Chapter 13 case "for cause," which has been defined by case law to include bad faith by the debtor. Under § 706(a), a debtor's one-time right to convert a case from Chapter 7 may be denied in "extreme circumstances," such where

the debtor acted with subjective bad faith. Therefore, by nature of the relief sought by the Trustee, the Debtor was on reasonable notice that the Debtor's statements and conduct were likely to be an issue.

Moreover, the Trustee's Opposition specifically referenced certain portions of the Debtor's testimony at the § 341 meeting and immediately thereafter identified certain statements made by Attorney West which conflicted with those representations. This was sufficient to put the Debtor on notice that the Trustee was focusing on the representations made by the Debtor at the § 341 meeting. For notice to be sufficient under these circumstances, it is not necessary for the motion to mention the phrase "bad faith" if the facts and conduct alleged are sufficient to raise the inference of bad faith. The Trustee's Opposition contains allegations that reasonably and objectively question the Debtor's good faith in requesting the conversion to Chapter 13. Accordingly, we find that the Trustee's Opposition gave the Debtor adequate notice regarding the issue of bad faith.

**III. Whether the Debtor's Chapter 13 plan is insufficient due to the Debtor's failure to include the unliquidated personal injury claim.**

As set forth above, on June 18, 2002, the Debtor filed a Chapter 13 plan and Amended Schedules E, I & J. Neither the Chapter 13 plan, nor the Liquidation Analysis make any reference to the Debtor's unliquidated personal injury claim.

At the hearing, the Debtor's counsel attempted to argue that the Debtor was not required to provide for the personal injury claim in the Chapter 13 plan until the claim was liquidated, and that the claim would have little effect on any distribution to unsecured creditors. The Bankruptcy Court rejected this argument. Clearly, the Debtor's personal injury claim is property of the estate under §§ 541(a) and 1306(a) [6] and therefore must be disclosed in a Chapter 13 plan. Therefore, the plan should have provided for payment of any judgment or settlement the Debtor is likely to receive on account of the personal injury claim.

In addition, it appears that the Debtor's proposed Chapter 13 plan does not meet the requirement of § 1325(a)(4). Under § 1325(a)(4), in order to be confirmed, a plan of reorganization must provide for distribution of property of equal or greater value than the amount unsecured creditors would receive in a liquidation under Chapter 7 of the Bankruptcy Code. *See* 11 U.S.C. § 1325(a)(4). The Debtor's proposed Chapter 13 plan does not meet this requirement because, in a Chapter 7 bankruptcy case the unsecured creditors would be entitled to a pro rata distribution of the proceeds from the personal injury claim, which is not provided for in the Chapter 13 plan.

Based on the foregoing, it does not appear that the Bankruptcy Court erred in finding that the Chapter 13 plan was insufficient due to the Debtor's failure to include the unliquidated personal injury claim. Although the June 20, 2002 hearing was not a confirmation hearing, this finding and conclusion further supports the Bankruptcy Court's finding that the Debtor's request to convert to Chapter 13 was made in bad faith.

---

**6.** Property of the bankruptcy estate includes all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a). Thus, property of the estate includes a debtor's claim for personal injuries whether the claim is unliquidated or settled at the time of filing the bankruptcy petition. A debtor's personal injury claim remains the property of the bankruptcy estate unless it qualifies as an exemption under 11 U.S.C. § 522.

### *CONCLUSION*

Based on the foregoing, the Bankruptcy Court's determination that the Debtor converted her Chapter 7 case to a Chapter 13 case and filed her Chapter 13 plan in bad faith was not clearly erroneous. The unrebutted facts satisfy both the "totality of the circumstances" test for a finding of bad faith under § 1307(c) and the "extreme circumstances" test of § 706(a). In addition, the Bankruptcy Court did not err by not conducting an evidentiary hearing or relying on the Trustee's factual representations, where the Debtor failed to request an evidentiary hearing and failed to adequately dispute the Trustee's core allegations. Consequently, the Bankruptcy Court's decision is AFFIRMED.